IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN MARTIN GARCIA, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | NO.4:08-cv-02929 |
| | § | Hon. Vanessa Gilmore |
| RICK THALER, Director | § | (Death Penalty Case) |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

RESPONDENT'S MOTION FOR SUMMARY JUDGMENT
WITH BRIEF IN SUPPORT

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
For Criminal Justice

*Counsel of Record

EDWARD L. MARSHALL
Chief, Postconviction Litigation Division

*GEORGETTE P. ODEN
Assistant Attorney General
Postconviction Litigation Division

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400

_____

ATTORNEYS FOR RESPONDENT

## MOTION FOR SUMMARY JUDGMENT
## WITH BRIEF IN SUPPORT

Petitioner Juan Martin Garcia (Garcia) was properly convicted of the capital murder of Hugo Solano during the course of a robbery and was sentenced to death. He now challenges his presumptively valid death sentence in this Court pursuant to 28 U.S.C. §§ 2241 & 2254.  For the reasons discussed below, Garcia fails to demonstrate he is entitled to federal habeas relief.

## GARCIA'S ALLEGATIONS

In this federal habeas proceeding, Garcia raises the following allegations:

1.   His execution would violate the Eighth and Fourteenth Amendments because Garcia is mentally retarded;

2.   Admitting extraneous offense evidence during the penalty phase violates Due Process because it is analogous to punitive civil damages awarded on the basis of injuries to nonparties, under Philip Morris;[1]

3.   Garcia was denied constitutionally effective counsel during the punishment phase of trial because counsel elicited expert testimony that mentioned Garcia's race or ethnic origin;

4.   Garcia was denied constitutionally effective counsel during the punishment phase of trial because counsel failed to investigate and present mitigating evidence of Garcia's alleged Post Traumatic Stress Disorder (PTSD) diagnosis; and

5.   Garcia was denied constitutionally effective counsel during appeal because appellate counsel failed to appeal on the basis that trial counsel was ineffective for failing to investigate and

---

[1]   Philip Morris USA v. Williams, 549 U.S. 346 (2007).

1

present mitigating evidence of Garcia's alleged PTSD diagnosis.

These requests for relief must fail. All but one are procedurally defaulted and unexhausted. Further, Garcia cannot show that the state court unreasonably applied clearly established federal law or unreasonably determined the facts. Also, he fails to present clear and convincing evidence to overcome the presumption of correctness due to the state court's factual findings. Therefore, the requested relief should be denied.

## STATEMENT OF THE CASE

Garcia was indicted in 1999 in the 338th Judicial District Court of Harris County, Texas, for the capital offense of murdering Hugo Solano in the course of committing or attempting to commit the offense of robbery which occurred on or about September 17, 1998. 1 CR 6[2]; see Tex. Penal Code Ann. §19.03(a)(2) (Vernon 2003). In 2000, Garcia was tried before a jury upon a plea of not guilty and was found guilty of capital murder. 1 CR 290. Following a separate punishment hearing, the jury answered the two special sentencing issues submitted pursuant to Article 37.071(b) of the Texas Code of Criminal Procedure. Id. at 290-91. In accordance with their verdict and state law, on February 25, 2000, the trial court assessed Garcia's punishment at death. Id.

Garcia appealed his conviction and sentence to the Texas Court of Criminal Appeals, which affirmed. Garcia v. State, 57 S.W.3d 436, 437-38 (Tex.

---

[2]     "CR" refers to the Clerk's Record of documents filed with the district court during Garcia's trial, preceded by volume number and followed by page number(s).

Crim. App. 2001).  The Supreme Court denied his petition for writ of certiorari on February 24, 2003.  Garcia v. Texas, 537 U.S. 1195.

Garcia's first state petition for habeas corpus, raising twenty-eight claims for relief, was filed on August 15, 2001, while direct appeal was pending.  1 SHCR[3] at 2.  The trial court held a paper hearing in which it considered the affidavit of trial counsel.  2 SHCR at 479-487.  The Court of Criminal Appeals adopted the trial court's findings of fact and conclusions of law, with one exception,[4] in their denial of Garcia's application for writ of habeas corpus on September 26, 2007.  Ex parte Garcia, 2007 WL 2790589 (Tex. Crim. App.)(not designated for publication).

Garcia filed his federal petition for writ of habeas corpus on September 25, 2008. Pet., ECF No. 1.  As it contained several unexhausted claims, Garcia then filed a motion to stay and abate on October 15, 2008.  Motion, ECF No. 2.  It was granted December 29, 2008.  Order, ECF No. 5.  Garcia filed his subsequent petition for writ of habeas corpus in state court on February 11, 2009.  Ex parte Garcia, No. 67,096-02 (SHCR-02) at 1.  It was dismissed as an abuse of the writ on September 16, 2009.  Ex parte Garcia, 2009 WL 2963752 (Tex. Crim.

---

[3]     "SHCR" stands for State Habeas Clerk's Record, containing the papers filed during Garcia's first state writ, preceded by volume number and followed by page number(s).

[4]     "In Finding of Fact 53, this Court does not adopt that portion of the finding that relates to the conclusiveness of the confession of error, vel non, in Saldano [v.] State, 70 S.W.3d 873 (Tex. Crim. App. 2002), or its relevancy to [Garcia's] claim." Ex parte Garcia, 2007 WL 2790589 at *1.

App.)(not designated for publication).  Garcia returned to this Court and timely

filed an amended petition on March 1, 2010.  Am. Pet., ECF No. 9.

This response is timely filed.

## STATEMENT OF FACTS

I.    Facts of the Crime

The evidence presented at [Garcia's] trial showed that during
August and September of 1998, he and three accomplices went on
a crime spree in Harris County. As part of that crime spree, [Garcia]
attempted to rob 32 year old Hugo Solano. When Solano refused to
hand over any money, appellant shot him four times in the head and
neck, killing him.

Garcia v. State, 57 S.W.3d at 437-38.

II.   Punishment Evidence

The state habeas court entered findings of fact summarizing the evidence

admitted during the sentencing proceeding, which included Garcia's confession

to the instant crime and numerous others (DX[5] 5; 20 RR 22):

26.   The Court finds, based on the evidence elicited during
[Garcia's] trial, that [Garcia] continuously approached and
robbed people at gunpoint in the early hours of the morning,
and that at least three of the robberies resulted in a victim
being shot.  See Findings Nos. 11-25.

27.   The court finds that [Garcia] threatened to kill Harris County
Jail inmate Patrick Meece in November, 1999, saying that he
[Garcia] was already "in for [Hugo Solano]" so it did not
matter to him if he killed Meece, and that [Garcia] broke
Meece's nose.

---

[5]    "DX" stands for Defense Exhibit, followed by exhibit number.

28.  The Court finds that [Garcia] was on probation from the Texas Youth Commission in 1994 for the offense of terroristic threat; that [Garcia] was committed to TYC on January 19, 1995, for violating his probation; that [Garcia] was later paroled but failed to meet the terms of his parole; that a warrant was issued for [his] arrest on November 10, 1995, and that [Garcia] had an outstanding warrant on September 17, 1998.

* * *

30.  The Court finds that [Garcia] presented the punishment testimony of his mother, Esther Garcia; his step-father, Johnny Sierra; his sisters Priscilla and Alexandra Garcia; his wife, Heidy Garcia; Lynnie Ray Chatman, [Garcia's] co-defendant in the Patrick Meece assault case; Adam Acosta, deputy jailer; Ana Solano, the complainant's widow; and Dr. Walter Quijano, psychologist.

31.  The Court finds that [Garcia's] mother testified that she removed [Garcia] from school when he was about fifteen because he was not going to school; that [Garcia] was not retarded; and that [Garcia] could read and write.

2 SHCR 495-96 (internal citations omitted).

During punishment, the defense presented testimony of Dr. Walter Quijano, a clinical psychologist. 23 RR[6] 108-31; 24 RR 5-78. Trial counsel asked Dr. Quijano to explain how he arrives at an opinion regarding risk assessment and future dangerousness in a particular individual. 23 RR 111. Dr. Quijano explained that there are "three groups of factors" which influence the likelihood that a person will commit crimes in the future, including statistical factors, environmental factors, and clinical factors. Id. The first category—statistical

---

[6]   "RR" stands for Reporter's Record, the court reporter's transcript of the trial proceedings, preceded by volume number and followed by page number(s).

5

factors—encompasses age, history of violence, race or ethnicity, use of weapons, drugs, or alcohol, socioeconomic status, and work stability.  23 RR 112-13. Among statistical factors, Dr. Quijano opined that:

> The race plays a role in that the—among dangerous people, minority people are overrepresented in this population.  And, so, blacks and Hispanics are overrepresented in the—in the dangerous—so-called dangerous population.

Id. at 112.  In Dr. Quijano's opinion, age was the most important statistical factor in assessing future dangerousness.  Id.  Dr. Quijano testified that some factors are static and some are not, e.g., age will change over time, race and gender will not change, but access to weapons and drugs can be controlled.  Id. at 113-14.  Race was not mentioned again.

Dr. Quijano described in detail the Texas prison system and security policies, and the jury was shown a videotape of a maximum security facility.  Id. at 114-131.  Given a hypothetical similar to Garcia's case and the security techniques used to control violent behavior in prison, Dr. Quijano theorized that Garcia would not be dangerous in a prison setting.  24 RR 45-48.  Before closing arguments, the jury was instructed that it was "not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling. . ."  1 CR 282.  Neither the State nor the defense mentioned race or ethnicity during closing arguments or suggested that the jury's assessment of future dangerousness should rest on those factors.  25 RR 4-44.

In an affidavit submitted during state habeas review, one of the trial attorneys explained their decision to call Dr. Quijano as a witness and his assessment of Dr. Quijano's testimony:

> The defense hired Dr. Walter Quijano to testify during the
> defendant's trial as an expert on the Texas prison system and how
> the prison system worked so that the defendant wouldn't be a future
> danger if he were given a life sentence. . . . Prior to making this
> affidavit, I reviewed Dr. Quijano's testimony during the defendant's
> trial, including the portion where co-counsel Martin questioned Dr.
> Quijano about factors that contribute to dangerousness. . . . Dr.
> Quijano didn't testify that Hispanics or Blacks were more
> dangerous, just that they were overrepresented, something that can
> occur if a group is not treated the same or as fair as other groups.

2 SHCR 484; 499-501 (FF[7] 44-52).  The state habeas court credited his affidavit.

Id.

## STANDARD OF REVIEW

I.    Anti-terrorism and Effective Death Penalty Act (AEDPA)

Garcia filed his federal writ petition in 2010, thus review is governed by
the federal habeas statutes as amended by the AEDPA.  See Lindh v. Murphy,
521 U.S. 320, 335-36 (1997).  As an initial matter, habeas relief is inappropriate
if a claim is not cognizable on federal review.  Garcia, confined pursuant to a
state court judgment, is entitled to relief "only on the ground that he is in
custody in violation of the Constitution or laws or treaties of the United States."
28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Under 28 U.S.C. § 2254(d), a federal court may not issue a writ of habeas
corpus for a defendant convicted under a state judgment unless the adjudication
of the relevant constitutional claim by the state court, (1) "'was contrary to'
federal law then clearly established in the holdings of" the Supreme Court; or (2)
"'involved an unreasonable application of'" clearly established Supreme Court

---

[7]    "FF" refers to the Findings of Fact entered by the state habeas court.

7

precedent; or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 412 (2000)); 28 U.S.C. § 2254(d). The Supreme Court has explained that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result. (Terry) Williams, 529 U.S. at 405–06.

A "run-of-the-mill" state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. (Terry) Williams, 529 U.S. at 406. To this end, a state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. Id. at 407-09. And as the Supreme Court recently described this deferential standard, in order to determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Richter, 131 S. Ct. at 786 (emphasis added). Indeed, this is the "only question that matters under § 2254(d)(1)." Id.

Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the

correctness of the state court's decision. Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also Woodford v. Visciotti, 537 U.S. 19, 27 (2002) (federal habeas relief is only merited where the state-court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion"). Moreover, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Alvarado, 541 U.S. at 664. This is particularly true when reviewing a state court's application of Strickland v. Washington, 466 U.S. 668 (1984), which when analyzed in conjunction with § 2254(d), creates a difficult to surmount, "doubly" deferential assumption in favor of the state court denial. Richter, 131 S. Ct. at 786.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Richter, 131 S. Ct. at 786.

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

Id. (emphasis added) (internal citations omitted).

Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness, and not every jot of its reasoning. Neal v. Puckett, 286 F.3d

230, 246 (5th Cir. 2002) (en banc); Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001); see also Catalan v. Cockrell, 315 F.3d 491, 493  (5th Cir.  2002) (". . . we review only the state court's decision, not its reasoning or written opinion . . . ."). Indeed, state courts are presumed to "know and follow the law." Visciotti, 537 U.S. at 24. And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, AEDPA's deferential standard of review nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." Early v. Packer, 537 U.S. 3, 8 (2002); Richter, 131 S. Ct. at 786.

If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard.  (Terry) Williams, 529 U.S. at 381. Stated differently:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Richter, 131 S. Ct. at 786-87 (emphasis added). And a federal court must be wary of circumstances in which it must "extend a [legal] rationale" of the Supreme Court "before it can apply to the facts at hand . . ." because such a process suggests the proposed rule is not clearly established. Alvarado, 541 U.S. at 666.

AEDPA also provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." Valdez v. Cockrell, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

And except for the narrow exceptions contained in § 2254(e)(2), the evidence upon which a petitioner would challenge a state court fact finding must have been presented to the state court. Because a federal habeas court is prohibited from granting relief unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would be of no avail to a habeas petitioner. 28 U.S.C. § 2254(d)(2); Cullen v. Pinholster, --- S.Ct. ----, 2011 WL 1225705 at *10 (April 4, 2011).

Finally, where a habeas petitioner has failed to fully develop the factual bases of his claims in state court, he is precluded from further factual development in federal court unless (1) his claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) he establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claim of actual

11

innocence that can only be established by newly discovered evidence. (Michael) Williams v. Taylor, 529 U.S. 420, 436 (2000). For example, a petitioner's failure to present controverted, previously unresolved factual issues to the state court is sufficient to constitute "failure" under the plain meaning of § 2254(e)(2). Id. at 433. But even if the petitioner can meet the foregoing standard, it is within this Court's discretion to deny a hearing if sufficient facts exist to make an informed decision on the merits. Clark v. Johnson, 227 F.3d 273, 284-85 (5th Cir. 2000).

## II.    Summary Judgment Standard In Habeas Corpus Cases

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000) (citing Rule 11, Rules Governing § 2254 Cases; Fed. R. Civ. P. 81(a)(2)). Summary judgment is proper if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Martinez v. Johnson, 255 F.3d 229, 237 (5th Cir. 2001) (citing Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 482 (5th Cir. 2000)); Fed. R. Civ. P. 56 (c).

In ruling on a motion for summary judgment, a court views the evidence through "the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, 477 U.S. 242, 254 (1986). Thus, the application of the summary judgment standard to a habeas corpus case differs from its application in other civil cases to the extent that habeas' substantive evidentiary rules or burdens

differ.  In the ordinary civil context, courts must construe the facts of the case in favor of the non-moving party.  Id. at 255.  In the habeas context, however, where factual allegations have been adversely resolved by express or implied findings of the state courts and the petitioner fails to demonstrate, by clear and convincing evidence, that § 2254(e)(1)'s presumption of correctness should not apply, it is inappropriate for the court to resolve the facts of the case in petitioner's favor.  Marshall v. Lonberger, 459 U.S. 422, 432 (1983).

ANSWER

I.    Garcia's Mental Retardation Claim Was Dismissed as Successive and Therefore is Procedurally Defaulted. Additionally, the New Evidence He Presents to This Court Proves Garcia to be Anything But Mentally Retarded.

Garcia's state writ Atkins v. Virginia[8] claim was dismissed as successive because he failed to present substantial evidence that he falls within the class of mentally retarded individuals for whom the death penalty would constitute cruel and unusual punishment under Atkins.  See Ex parte Rivera, 2003 WL 21752841, at *2 (Tex. Crim. App. July 25, 2003).  This was an adequate and independent state law ground for dismissal.  The new evidence before this Court is factually unexhausted; but even so, were this Court to consider it, Garcia's claim to retardation would fail.

A.  The state court dismissed his procedurally defaulted Atkins claim on adequate and independent state-law grounds.

This Court cannot review the merits of Garcia's habeas petition if the

---

[8]    536 U.S. 304 (2002).

claims in the petition are procedurally defaulted. Magwood v. Patterson, 130 S. Ct. 2788, 2801 (2010). A habeas claim can be procedurally defaulted in either of two ways. Coleman v. Dretke, 395 F.3d 216, 220 (5th Cir. 2004). First, if the prisoner has never fairly presented that claim to the highest available state court, the claim is unexhausted. 28 U.S.C. § 2254(b)(1)(A). Second, if the prisoner has presented the claim to the highest available state court but that court has dismissed the claim on a state-law procedural ground instead of deciding it on the merits, the claim has been decided on an independent and adequate state-law ground. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir.1997).

In Ex parte Rivera, the Court of Criminal Appeals recognized that because the "legal basis for an Atkins claim was not available until June 20, 2002 . . . an applicant making an Atkins claim may be entitled to have the merits of a subsequent writ application considered if his first application had been filed before the Atkins decision was announced." Ex parte Rivera, at *1. Garcia filed his first state writ petition on August 15, 2001. 1 SHCR 3. Timing, however, is not everything, the state appellate court explained: to avoid dismissal on a successive state writ asserting Atkins, the petitioner must present "sufficient specific facts" of mental retardation. Id. And a bald assertion of mental retardation "does not suffice to leap over this second hurdle." Id. Texas defines "mental retardation" as follows:

> (1) significantly subaverage general intellectual functioning; (2) accompanied by related limitations in adaptive functioning; (3) the onset of which occurs prior to the age of 18. . . . [T]his court interprets the "about 70" language of the AAMR's definition of mental retardation to represent a rough ceiling, above which a finding of mental retardation in the capital context is precluded.

14

Ex parte Hearn, 310 S.W.3d 424, 426, 430 (Tex. Crim. App. 2010).  Under Texas

law, a prima facie case of mental retardation must be substantial to justify

review on a subsequent state writ:

> To fulfill the prima facie requirement for an Atkins claim, an
> applicant should provide evidence of at least one I.Q. test
> (preferably taken before the age of 18) from which a reasonable trier
> of fact could conclude that the person is mentally retarded under
> Atkins, coupled with supporting school and medical records and
> record evidence or affidavits from qualified experts (or laymen with
> sufficient personal knowledge of specific conduct) that raises an
> issue about applicant's lack of adaptive skills and the onset of
> mental retardation before age 18.

Ex parte Rivera, at *2.

Garcia presented no such evidence.   In his second state writ,

postconviction counsel acknowledged having conducted interviews with Garcia,

his family, and his friends, and referenced viewing his "extremely poor school

record," yet declined to submit even one of these interviews or a single page of

grade reports to the state court.  SHCR-02 at 32-49.  Counsel instead baldly

asserted that Garcia "has significant limitations in his adaptive functioning and

. . . exhibited these diagnostic features before the age of eighteen." Id. at 35.  He

indicated he was "applying" to the state court for funding for IQ testing and

investigation, but no such application is appended, nor does Garcia complain

that it was denied.  SHCR-02 at 35.  He simply did not act.

However, the state court did not decide to dismiss his claim in a vacuum.

Evidence at trial contraindicated Garcia's claims to significantly subaverage

intellectual function or significant adaptive behavior deficits prior to the age of

eighteen.  Testimony from several sources indicated that Garcia had problems with, but was capable of, reading and writing.  3 RR 32; 19 RR 33.  His mother described him as a slow learner, but specifically denied that he was mentally retarded.  22 RR 130-132.  She was not a good reader herself and took him out of school when he was fifteen years old.  Id. at 133, 141.  He played baseball growing up. 22 RR 184.  His sister described him as a happy kid who played with his siblings like any regular child.  23 RR 14-16.  He had chores such as taking out the trash and cleaning up the yard.  23 RR 23.

When his stepfather went to prison for molesting his sister, Garcia lost his father figure and began hanging out with a bad crowd.  22 RR 130-33; 23 RR 18-19.  He clearly had a difficult home life, with allegations of sexual abuse, drug use, and excessive physical discipline in the record.  22 RR 164-190.  One sister left home at age fourteen and had three children within the next three years. 23 RR 12-18.  Garcia started using drugs when he was thirteen and drinking alcohol when he was sixteen.  23 RR 26.  He had a fistfight with his stepfather when he was sixteen or seventeen.  23 RR 24.

While this environment interfered with Garcia's progress in school and influenced him towards violence, it did not prevent Garcia from holding jobs without a problem when he wanted to, working construction, and living with a roommate and a cousin.  19 RR 46, 55-62; 20 RR 25; 21 RR 9, 16; 23 RR 28.  He made friends in the neighborhood, had girlfriends and later, a wife and child. 22 RR 137-139; 23 RR 25.  He worked for his brother-in-law as a construction "boss man" and made enough money to help support a sister and her children as well as his own household.  23 RR 31, 40.  He knew how to purchase groceries

16

and on occasion shopped for his sister's family as well.  Id.   He took his son to the park, bought him toys and food, and was always able to provide for his family.  23 RR 43.  He moved his family cross-country to California at one point, working in a fast food restaurant chain, before returning to Texas.  23 RR 43-51.  And while in jail awaiting trial, Garcia exercised leadership over other inmates and "ran the tank" he was housed in.  21 RR 188-90.

In short, the record available to the state court wholly failed to indicate that Garcia made a prima facie case for meeting the clinical definition of mental retardation.  See Atkins, 536 U.S. at 309 n.3; Penry v. Lynaugh (Penry I), 492 U.S. 302, 344 (1989); Ex parte Rivera, 2003 WL 21752841, at *2.  Consequently, the state court dismissed Garcia's Atkins argument "as an abuse of the writ."  Ex parte Garcia, 2009 WL 2963752, at *1; Ex parte Rivera, 2003 WL 21752841, at *2.

This Court can ignore the resulting procedural bar only if it is willing to second-guess the Texas high court's interpretation of its own law, an undertaking for which it is ill suited.  E.g., Estelle v. McGuire, 502 U.S. at 67-68 ("We reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  And to rule in Garcia's favor on these Atkins arguments, this Court would have to construe the Texas statute in a way that "contradict[s] a recent decision of the highest state court."  Lords Landing Village Condominium Council of Unit Owners v. Continental Insurance Co., 520 U.S. 893, 896 (1997).

Of course, Garcia now presents additional factual support of this claim, but it was available much earlier.  "Section 2254(d)(1) refers, in the past tense,

17

to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court." Pinholster, 2011 WL 1225705 at *8.  While a court may consider evidence presented for the first time in federal habeas proceedings, the evidence "cannot present new factual allegations and must supplement, as opposed to fundamentally alter, claims presented to the state court." Smith v. Quarterman, 515 F.3d 392, 400 (5th Cir. 2008) (citing Morris v. Dretke, 379 F.3d 199, 204-05 (5th Cir. 2004), and Dowthitt v. Johnson, 230 F.3d 733, 746 (5th Cir. 2000)).  "If the petitioner presents material evidentiary support for the first time in federal court, then he has not exhausted his state remedies." Smith, 515 F.3d at 400 (citing Morris).  Attempts to present new evidence "threatens the state's right 'to pass upon and correct alleged violations of its prisoners' federal rights.'" Id. (citing Summers v. Dretke, 431 F.3d 861, 880 (5th Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  "It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." Pinholster, 2011 WL 1225705 at *9.

Garcia's Atkins claim relies almost exclusively on material additional evidentiary support which renders it unexhausted.  It is undisputed that Garcia presented no IQ evidence in state court.  Nor did he present a single affidavit from a friend or family member, nor any grades from school; indeed, Garcia

presented no evidence whatsoever in state court.  This is especially surprising considering that some six years elapsed between the decision in Atkins and the filing of his successive state writ—years in which Garcia could easily and inexpensively have acquired at least some school records and affidavits from parents, family, and friends.  Garcia did not petition the state court for funding to hire an investigator, a psychologist, or any other assistance in pursuing this claim.  At best he assured the state court he was "applying for funding."  SHCR-02 at 35.  Yet even without funding, he could have tried to build a case from easily-obtainable records from TYC and the schools, and affidavits from teachers and family.

While Garcia presents the same legal claim in his federal habeas petition, it is now supported by five IQ scores, four of which were available at the time his state writ was filed, as well as sworn statements from readily accessible siblings, an ex-girlfriend, and a childhood teacher.  Considered together, Garcia's new evidence places his claim in a substantially different evidentiary posture than was ever considered during state habeas proceedings and, thus, the claim is unexhausted and procedurally barred from relief.

Even if this Court were to hold that his claim is not procedurally barred, the Supreme Court precludes it from considering Garcia's new offerings in a ruling on the merits:

> [R]eview under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that 'resulted in' a decision that was contrary to, or 'involved' an unreasonable application of, established law. This backward looking language requires an examination of the state court decision at the

time it was made. It follows that the record under review is limited
to the record in existence at that same time, i.e., the record before
the state court.

Cullen v. Pinholster, 2011 WL 1225705, Slip Op. at *8 (April 4, 2011).

Garcia never argues that Texas's abuse-of-the-writ provision is not strictly
and regularly followed, even though it is his burden. Williams v. Puckett, 283
F.3d 272, 280 (5th Cir. 2002);  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir.
1999).  Garcia can overcome the bar to federal relief only by showing cause and
prejudice for his default, or that failure to consider the claims will result in a
fundamental miscarriage of justice.  Coleman, 501 U.S. at 750;  Wainwright v.
Sykes, 433 U.S. 72, 87 (1977).  However, Garcia makes no argument against the
procedural bar nor offers the Court any justification for excusing his failure to
present a prima facie case.

Cause "must be something external to the petitioner, something that
cannot be attributable to him."  Coleman, 501 U.S. at 750.  A petitioner must
ordinarily identify "some objective factor external to the defense [that] impeded
counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier,
477 U.S. 478, 488 (1986);  McCleskey v. Zant, 499 U.S. 467, 497 (1991) (citing
Carrier, 477 U.S. at 492).  "Objective factors that constitute cause include
interference by officials that makes compliance with the State's procedural rule
impracticable, and a showing that the factual or legal basis for a claim was not
reasonably available to counsel."  Zant, 499 U.S. at 494 (internal quotations
omitted).  However, as stated above, the factual bases for Garcia's claim were
reasonably available with the slightest exertion on the part of post-conviction

counsel.

If a petitioner fails to prove cause, the federal reviewing court need not address the prejudice prong of the test. Engle v. Isaac, 456 U.S. 107, 134 n. 43 (1982). Moreover, the requisite showing of "prejudice" is significantly greater than that required to establish plain error. "The habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage infecting his entire trial with error of constitutional dimensions.'" Carrier, 477 U.S. at 493.

No external impediment prevented Garcia's habeas counsel from complying with state procedural rules. After the Atkins decision was issued in June 2002, Garcia bypassed the opportunity to obtain and offer evidence to support his successive habeas application. By delaying presentation of this evidence until the instant proceeding, Garcia necessarily failed to satisfy Texas's successive writ bar, resulting in the dismissal of his successive application. SHCR-02 at cover. Because these acts or omissions are attributable to Garcia, they cannot serve as cause for his default. Neither can Garcia show that he would be prejudiced if the Court failed to reach the merits of his Atkins claim because, as explained below, his evidence does not support a credible claim of mental retardation, much less show that his death sentence is error of constitutional dimension.

Because Garcia failed to fully develop the factual bases of his retardation claim in state court, he is precluded from further factual development in federal court because he fails to argue, much less establish by clear and convincing evidence, that, but for constitutional error, no reasonable factfinder would have

21

found him guilty.  28 U.S.C. § 2254(e)(2).

    B.    His Atkins claim also fails on the merits.

At best, Garcia presents evidence that he suffered from a difficult home environment, drug and alcohol abuse, and lack of direction or emphasis on the importance of education.  However, he fails to show that he has significantly subaverage intellectual function— all four of his pre-conviction IQ scores are patently in the average range (100, 91, 83 and 83) while his sole post-conviction score is a 75.  Am. Pet., ECF No. 9,  at 32.  All five are above Texas's presumptive cutoff for retardation.  Ex parte Hearn, 310 S.W.3d at 430.  Because his intellect is normal, the adaptive behaviors he identifies as "deficient" are apparently related to other psychological and environmental issues, not retardation.  Id. at 429-30; Ex parte Briseno, 135 S.W.3d 1, 8 (2004).

Because Garcia cannot overcome the procedural default ruling of the state court, nor can he show a meritorious case for retardation, this Court should dismiss this claim.

II.    Garcia Fails to Overcome the Procedural Default of his Philip Morris Claim Which is Entirely Unpersuasive.  The Future Dangerousness Question Inures to a Defendant's Constitutional Benefit.

Garcia's second claim relies on the Supreme Court decision in Philip Morris, which held that civil punitive damages awards for injuries to nonparties violate the Due Process clause.  Garcia first presented this claim for relief in his second state writ.   SHCR-02 at 15. It is procedurally defaulted and unpersuasive.

A. Although Philip Morris was decided after Garcia filed his first state

writ, it has nothing to do with his case, so the Texas court dismissed his claim as procedurally defaulted.

Garcia contends that this claim should have been exempt from the state's statutory successive writ bar because Philip Morris came down in 2007, well after he filed his first state writ in 2001.  SHCR-02 at 14.   The state court disagreed.  Ex parte Garcia, 2009 WL 2963752, at *1.  It is insufficient to simply point out that some new caselaw exists— Garcia must also demonstrate that it applies to his case in order to be excepted from the successive writ bar.  As the Court of Criminal Appeals has noted,

> Before a court can consider the merits of a habeas application, the application must contain sufficient facts establishing one of the three exceptions listed in Article 11.071, § 5(a). . . an applicant could not meet the § 5(a)(1) exception on the basis of new law simply by relying upon United States Supreme Court cases that established new law. He was still required to show that the facts in his case fit "under the umbrella of that 'new' legal claim."

Ex parte Henderson, 246 S.W.3d 690, 693 (Tex. Crim. App. 2007)(Keller, P.J., dissenting)(quoting Ex parte Staley, 160 S.W.3d 56, 63-64 (Tex. Crim. App. 2005)).

A criminal death penalty case is patently different from a civil suit for damages.  To find that Garcia's Philip Morris claim is not barred would vitiate the successive writ bar, as the Court of Criminal Appeals succinctly stated in a similar context:

> While Article 11.071, section 5(a)(1) does not state that the application must include facts establishing that the applicant has a prima facie Atkins claim, it would be absurd to consider applications in which the applicant does not show that the previously unavailable legal basis applies to his claim. To read the

23

> statute otherwise would mean that every time a new law is passed
> or precedent is set, every inmate could file a subsequent application
> for writ of habeas corpus, regardless of whether the newly available
> legal basis applied to his situation, and the court would have to
> consider the merits. This clearly undermines the purpose of the
> subsequent-writ provisions.

Ex parte Brooks, 219 S.W.3d 396, 400 (Tex. Crim. App. 2007). Because Garcia failed to demonstrate that his case fell within the constitutional purview of Philip Morris, the state court dismissed that claim as successive. This is not a merits determination, but a procedural bar. As Garcia has not identified cause for his failure to properly present it in state court, his second claim should be dismissed as unexhausted. 28 U.S.C. § 2254(b)(1); Beazley, 242 F.3d at 263.

B.   Garcia's interpretation of Philip Morris is barred by Teague v. Lane.[9]

An expansion of due process jurisprudence to hold that extraneous offense evidence is inadmissible in the punishment phase of a capital trial would impermissibly violate the non-retroactivity rule of Teague. There is no doubt that Garcia's argument calls for a new rule of law. "[That] question is 'whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.'" Goeke v. Branch, 514 U.S. 115, 118 (1995) (quoting Caspari v. Bohlen, 510 U.S. 383, 390 (1994) (internal quotations omitted)). Nor can Garcia demonstrate that a Teague exception applies. Under Teague, "a new rule should be applied retroactively if

---

[9]     489 U.S. 288 (1989).

24

it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" 489 U.S. at 307 (quoting Mackey v. United States, 401 U.S. 667, 692 (1971)). "Second, a new rule should be applied retroactively if it requires the observance of 'those procedures that ... are implicit in the concept of ordered liberty.'" Id. (quoting Mackey, 401 U.S. at 693 (internal quotations omitted)). Thus, to the extent Garcia advances a new interpretation of due process, the non-retroactivity doctrine of Teague bars relief.

C.    Garcia stretches Philip Morris beyond recognition.

A jury award of civil punitive damages based on injuries to nonparties is nothing like a jury's answer to the future dangerousness special issue based on a defendant's history of violent crime. Garcia cites no authority supporting his backdoor challenge to the future dangerousness question and no case law stating that Philip Morris requires relief be granted in capital cases where extraneous offense evidence was introduced. A claim not adequately briefed is deemed abandoned. Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

The Supreme Court's concerns in Philip Morris are inapposite here. The jury was not left to "speculate" nor were there "risks of arbitrariness, uncertainty and lack of notice." Am. Pet., ECF No. 9, at 37. Far from deprived of opportunity to defend against the charges, Garcia had ample notice of what he was accused of. The State had a completely open file, and Garcia had been indicted on all of the extraneous offenses, with the exception of a new assault while he was in jail awaiting trial. 2 RR 15-16; 1 CR 213-216.

Garcia posits that "future wrongdoing" in the civil context is analogous to

25

"future dangerousness" in the punishment phase of a capital trial because "both speculate about what the defendant might do in the future based upon his past acts."   Am. Pet., ECF No. 9,   at 37.   Perhaps that is why the future dangerousness question is constitutionally sound, in part as a vehicle for granting a life sentence.  Johnson v. Texas, 509 U.S. 350, 368 (1993) ("We believe that there is ample room in the assessment of future dangerousness for a juror to take account of the difficulties of youth as a mitigating force in the sentencing determination.").   In fact, numerous courts have approved of the future dangerousness question as one means that a defendant's mitigating evidence can be taken into account by the jury.  See Graham v. Collins, 506 U.S. 461, 475-76 (1993) (holding that Texas special issues permitted jurors to consider mitigating evidence of youth, family background and positive character under future dangerousness issue); Franklin v. Lynaugh, 487 U.S. 164, 178 (1988) (plurality opinion) (finding that petitioner's evidence of a good disciplinary record during his period of incarceration was "fully considered by the jury when it was asked to answer the [future dangerousness] [i]ssue"); see, e.g., Newton v. Dretke, 371 F.3d 250, 256-257 (5th Cir.2004) (youth, good character, church attendance, cooperation with police, unfaithful/drug dealing spouse, and impoverished background); Beazley v. Johnson, 242 F.3d 248, (5th Cir.2001) (good character); Boyd v. Johnson, 167 F.3d 907, 912 (5th Cir.1999) (positive character traits); James v. Collins, 987 F.2d 1116, 1121-22 (5th Cir.1993) (cooperation with police, remorse, impoverished and abusive family history, positive familial ties despite troubled upbringing); Barnard v. Collins, 958 F.2d 634, 640-41 (5th Cir.1992) (good character, including evidence of carpentry skills, work history, and familial

26

responsibility and support).  If anything, the future dangerousness question is "a safeguard against arbitrariness." Sonnier v. Quarterman, 476 F.3d 349, 367 (5th Cir. 2007). A jury finding of the aggravating circumstance of future dangerousness suffices to satisfy the Eighth Amendment. Thompson v. Lynaugh, 821 F.2d 1054, 1059 (5th Cir.1987).

If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard.  (Terry) Williams, 529 U.S. at 381.  Stated differently:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Richter, 131 S. Ct. at 786-87 (emphasis added).  And a federal court must be wary of circumstances in which it must "extend a [legal] rationale" of the Supreme Court "before it can apply to the facts at hand . . ." because such a process suggests the proposed rule is not clearly established. Alvarado, 541 U.S. at 666.  Such is the case here, and as a result, relief should be denied on this claim.

III.  **Garcia Was Not Denied Constitutionally Effective Counsel During the Punishment Phase Based on Counsel's Elicitation of Expert Testimony Which Mentioned Garcia's Race in Passing.**

Garcia alleges that he was denied his Sixth Amendment right to effective counsel because his attorney "solicited abhorrent testimony from his own expert

witness that minorities, specifically blacks and Hispanics, are inherently more dangerous than other races" in violation of the Constitution. Am. Pet., ECF No. 9, at 50. According to Garcia, this tactic "served no other purpose than to bolster the State's proposition that [Garcia] is a continuing threat to society." Id. at 51. Further, Garcia contends that counsel was ineffective because they failed to "understand or prepare for" Quijano, did not have him examine Garcia, and because Quijano agreed that Garcia was dangerous. Id. (citing 24 RR 52). Garcia maintains there is a reasonable probability that Garcia would not have been sentenced to death but for trial counsel's actions. Id. at 50. However, as demonstrated below, the state court's rejection of this claim was not contrary to, or an unreasonable application of, Strickland, and this Court should deny federal habeas relief. Buck v. Thaler, 345 Fed.Appx. 923, 928-29 (5th Cir. 2009); Granados v. Quarterman, 455 F.3d 529, 53-36 (5th Cir. 2006).

A.   Garcia's ineffective-assistance-of-counsel (IAC) claim is procedurally defaulted on adequate and independent state law grounds.

When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. Harris v. Reed, 489 U.S. 255, 262 (1989); Lowe v. Scott, 48 F.3d 873, 875 (5th Cir.1995). Such is the case here.

Garcia first raised this claim on direct appeal to the Court of Criminal Appeals, where it was dismissed. Garcia v. State, 57 S.W.3d 436, 440-41 (Tex. Crim. App.2001). Garcia brought this claim again in his first state writ of habeas corpus. 1 SHCR at 105-26. The state court therefore found it

procedurally barred under state law, and in its conclusions of law, held: "[Garcia's] allegation of ineffective assistance of trial counsel for eliciting testimony from defense witness Walter Quijano [regarding Garcia's race] . . . was raised and rejected on direct appeal of [Garcia's] conviction. As such, the issue need not be considered in the instant writ proceeding or in any subsequent proceedings." 2 SHCR 516 (citing Ex parte Acosta, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984)). The "raised and rejected on direct appeal" bar is regularly and consistently applied. Scheanette v. Quarterman, 482 F.3d 815, 824 (5th Cir. 2007); Sain v. Thaler, Slip Copy, 2010 WL 6032812, at *7 (N.D.Tex. 2010); c.f., McBreen v. Quarterman, Slip Copy, 2009 WL 1181062, at *6 (N.D. Tex. 2009)("From this brief passage, the Court cannot definitively determine whether Ramos[10][the raised-and-rejected bar] constitutes an adequate and independent state procedural ground that has strictly and regularly applied. In addition, based upon the manner in which the habeas court invoked Ramos, it is not clear that the court clearly and expressly relied on Ramos as an independent basis for its disposition of the case."). Therefore, this Court cannot address the merits of Garcia's claim.

    B.    In the alternative, this Saldano[11]-type claim is meritless and Garcia failed to meet the requirements of 28 U.S.C. § 2254(d) for relief.

Relief by this Court can only be granted if Garcia shows the state court's decision (1) "'was contrary to' federal law then clearly established in the holdings

---

[10]    Ex parte Ramos, 977 S.W.2d 616 (Tex. Crim. App. 1998).

[11]    Saldano v. Cockrell, 267 F.Supp.2d 635 (E.D. Tex. 2003).

29

of'' the Supreme Court; or (2) "'involved an unreasonable application of'" clearly established Supreme Court precedent; or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." Richter, 131 S. Ct. at 785. Garcia fails on all counts.

1.    The legal standards applying to IAC claims

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Richter, 131 S.Ct. at 171; Strickland, 466 U.S. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not

30

presented at trial, and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve."  Richter, 131 S. Ct. at 788 (citing Strickland, 466 U.S. at 689-690).  "Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" Richter, 131 S. Ct. at 788 (citing Strickland, 466 U.S. at 689); see also Bell v. Cone, 535 U.S. 685, 702 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  Richter, 131 S.Ct. at 788 (citing Strickland, 466 U.S. at 690).

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689; Lindh, 521 U.S. at 333, n. 7, and when the two apply in tandem, review is "doubly" so. Richter, 131 S.Ct. at 788 (citing Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009)).  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Knowles, 129 S. Ct. at 1420. "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is

31

any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S.Ct. at 788.

In order to determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Richter, 131 S. Ct. at 786 (emphasis added). Indeed, this is the "only question that matters under § 2254(d)(1)." Id. Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness, and not every jot of its reasoning. Neal, 286 F.3d at 246; Santellan, 271 F.3d at 193; see also Catalan, 315 F.3d at 493 (". . . we review only the state court's decision, not its reasoning or written opinion . . . ."). AEDPA's deferential standard of review applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." Early, 537 U.S. at 8; Richter, 131 S. Ct. at 786.

Moreover, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland, 466 U.S. at 690; Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002). A "conscious and informed decision on trial tactics and strategy is not a permissible basis for a claim of ineffective assistance of counsel unless the strategy was so poor that it robbed the defendant of any opportunity to get a fair trial." Smith, 311 F.3d at 668 (internal quotation omitted); Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999). Counsel should be deemed effective if they recognize possible punishment factors and employ

32

expert assistance in exploring those factors.  Id. at 675 (citing Dowthitt, 230 F.3d at 748).  However, there is no constitutional duty to utilize an expert, much less in any particular way.  Richter, 131 S. Ct. at 789-90; Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).

To prove prejudice, Garcia must show a reasonable probability that, but for counsel's assumed deficiencies during punishment, the jury "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."  Wiggins, 539 U.S. at 534; Strickland, 466 U.S. at 694-95.  A "reasonable probability" is one sufficient to undermine confidence in the outcome.  Visciotti, 537 U.S. at 23; Strickland, 466 U.S. at 694.  However, "it is insufficient to show only that the errors had some conceivable effect on the outcome of the proceeding."  (Terry) Williams, 529 U.S. at 394; Strickland, 466 U.S. at 693.

2.    Application of Strickland to this claim in the state courts

Garcia focuses his argument to this Court on why counsel's actions were ineffective, but he fails to establish that the state courts unreasonably applied Strickland; his ineffective assistance of counsel claim should be denied.  See Busby v. Dretke, 359 F.3d 708, 717 (5th Cir. 2004) ("[T]he test for federal habeas purposes is not whether [the petitioner made the showing required under Strickland]" but "whether the state court's decision—that [the petitioner] did not make the Strickland-showing—was contrary to, or an unreasonable application of" Strickland.) (quoting Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) (emphasis in original)).

With respect to defense counsel's performance, the state court reasonably

33

applied *Strickland* when it held on direct appeal that trial counsel was not deficient, and that "counsel's conduct could . . . be considered sound trial strategy" because they may have been showing the jury that despite all the factors possibly weighing against Garcia, he would not be a future danger because "the prison system's procedures and techniques would control or eliminate his tendency toward violence." *Garcia v. State*, 57 S.W.3d at 440-41.

The state habeas court, finding Garcia's claim procedurally barred, considered it alternatively on the merits and reasonably applied *Strickland* when it concluded that trial counsel "employed a reasonable trial strategy of presenting as much evidence as possible concerning the safety of the prison and its stabilizing effects on long-term inmates, especially in light of the extensive punishment evidence of [Garcia's] violent conduct." 2 SHCR 500 (FF 51), 516 (COL[12] 11-12). The state court further found that Quijano did not testify that Garcia was more dangerous because he is Hispanic, or that Hispanics are more dangerous than other races, as Garcia now contends. 2 SHCR 500 (FF 48); Am. Pet., ECF No. 9, at 47. It found instead that "Quijano's brief remarks about 'blacks and Hispanics' being overrepresented could be viewed as mitigating, i.e., that the criminal justice system was unfair to them." 2 SHCR 500 (FF 48). The state court emphasized the very small proportion of Quijano's testimony that concerned race. Id. 500 (FF 49). Garcia does not dispute these presumptively correct fact findings. As a result, the state court reasonably concluded that Garcia failed to show prejudice resulting from the isolated race comment. Id.

---

[12]     "COL" refers to the "conclusion of law" filed by the state habeas court.

516 (COL 13).

Rather, Garcia impugns the state court's legal conclusion by arguing that Dr. Quijano's mention of race renders the entire punishment phase unreliable. Am. Pet., ECF No. 9, at 51. Garcia maintains that "actual bias by a particular juror is not necessary; all that is necessary is the risk that racial prejudice may influence the sentencing decision." Id. Garcia avers that when the State introduced the same testimony in Saldano, constitutional error occurred. Id. at 51-52. However, there Dr. Quijano "testified that Saldano's Hispanic ethnicity increased the likelihood that he would be a danger in the future." 267 F.Supp.2d at 638. In this case, Dr. Quijano merely identified race as one statistical factor and pointed out that Hispanics were overrepresented in the criminal justice system; he did not state a causal relationship, nor did he link this statistic to Garcia as an individual. 2 SHCR 499 (FF 44-51), 516 (COL 12-13); 23 RR 112.

Importantly, contrary to Garcia's assertion, not every reference to race or ethnicity during punishment proceedings is "constitutionally impermissible." Am. Pet., ECF No. 9, at 48 (quoting Zant v. Stephens, 462 U.S. 862, 885 (1983)). Indeed, because neither the State nor the defense advised the jury to attach aggravating weight to Garcia's race, there was no Eighth Amendment violation.[13] Stephens, 462 U.S. at 885; Tuilaepa v. California, 512 U.S. 967, 983

---

[13]     Nor would Dr. Quijano's testimony be objectionable under the Equal Protection Clause. Racial classifications are ordinarily constitutionally suspect and subject to strict scrutiny. McLaughlin v. Florida, 379 U.S. 184, 192 (1964). However, "a defendant who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination," i.e., that the State invited his sentencing jury to act "with discriminatory purpose." McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (internal quotation omitted). Discriminatory purpose "implies more than intent as

(1994) (Stevens, J., concurring); 2 SHCR 501 (FF 54). Instead, Dr. Quijano's testimony—and the punishment evidence as a whole—was focused on factors individual to Garcia: his history of violent conduct and disregard for authority, his background, the nature of his crime, and the conditions under which he would serve a life sentence. Counsel believed that Dr. Quijano "didn't testify that Hispanics or Blacks were more dangerous, just that they were overrepresented, something that can occur if a group isn't treated the same or as fair as other groups . . . the defense strategy in presenting Dr. Quijano's testimony was to give the jury as much information as possible about the future dangerousness special issue and about the prison system and how prison structure can decrease or eliminate dangerousness." 2 SHCR 485. Thus, trial counsel encouraged the jury to make "an individualized determination on the basis of the individual and the circumstances of the crime," as required by the Eighth Amendment. Stephens, 462 U.S. at 879; 2 SHCR 501 (FF 54). As a result, there was nothing objectionable about Dr. Quijano's testimony and the credible, strategic decision to call him as a witness was not objectively unreasonable.[14] See Dowthitt, 230 F.3d at 747-48 (trial counsel's decision to

---

volition or intent as awareness of consequences." Id. at 298. Rather, Garcia would have to show that trial counsel elicited the complained of testimony "because of an anticipated racially discriminatory effect." Id. (emphasis in original). Under the circumstances, it cannot be argued that trial counsel anticipated or intended the jury to consider Garcia's race as evidence of his future dangerousness.

[14] Garcia's assertion that counsel failed to "understand or prepare for" Quijano's testimony or that counsel should have had Quijano examine Garcia is misplaced because trial counsel's strategy was based on a full investigation of "all reasonably available mitigating evidence." Wiggins, 539 U.S. at 524 (emphasis in original). Garcia fails to identify any facts that trial counsel was unaware of. Dr.

utilize an expert for one purpose rather than another is purely a matter of trial strategy); Crane, 178 F.3d at 314 (conscious and informed tactical decision is not ineffective "unless it is so ill chosen that it permeates the entire trial with obvious unfairness").

Nevertheless, Garcia fails to prove the unreasonableness of the state court's prejudice analysis.  Based on a review of the entire record, the state habeas court concluded that "[Garcia] failed to show harm, if any, so that the outcome would have been different, in light of Quijano's comment concerning overrepresentation being an isolated remark among extensive testimony about the security measures and classification system of prison, the lack of questioning by either trial counsel or the State about such comment, the non-specific nature of such comment, and the lack of jury argument concerning such comment."  2 SHCR 516 (COL 13).   Here, the state court's ultimate conclusion— no prejudice— is not unreasonable.

The Granados decision by the Fifth Circuit articulated it well:

Viewed through the AEDPA lens, we cannot conclude that the state court's application of Strickland and rejection of the claim of ineffective assistance of counsel was unreasonable. These are difficult and nuanced decisions the trial lawyer must make. That

Quijano's testimony that Garcia was dangerous (in the free world) is merely a necessary admission given Garcia's choices. To refuse to acknowledge that would have diminished the doctor's credibility and was pointless, given that the trial strategy was to show how prison would control or eliminate Garcia's dangerousness. Quijano did not need to examine Garcia to be an effective defense witness. As the Fifth Circuit ruled in a similar challenge to Quijano's testimony, "[T]hat counsel must look at every witness he would call as a potential witness for the state is etched in the brain of every experienced trial lawyer and here there was more. By not offering expert testimony based on an examination of Granados, counsel cut off the state's opportunity to have its expert examine Granados and offer testimony."  Granados, 455 F.3d at 535.

> they were not successful does not make them unreasonable. We are
> not persuaded that these tactical decisions introduced an
> impermissible use of race or ethnicity or were otherwise objectively
> unreasonable.

455 F.3d at 536.   The evidence of Garcia's future dangerousness was overwhelming: he admitted robbing a number of people at gunpoint, brutally beating one man with a hammer, and shooting at least three of his victims.  See Statement of Facts, supra.  Thus, there is no reasonable probability that the jury "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death" in the absence of Dr. Quijano's passing reference to race or ethnicity.  Wiggins, 539 U.S. at 534; Strickland, 466 U.S. at 694-95.  Nor does Dr. Quijano's testimony undermine confidence in the outcome of Garcia's trial.  Visciotti, 537 U.S. at 23; Strickland, 466 U.S. at 694.  As a result, habeas relief is unwarranted.

IV.   Garcia's   Ineffective-Assistance-of-Counsel-at-Sentencing   Claim   is
      Unexhausted and Procedurally Barred Because Garcia Failed to Show
      That he is Actually Innocent of the Death Penalty.  Further, he Fails to
      Demonstrate Deficiency or Prejudice.

Garcia's fourth claim accuses trial counsel of ineffective assistance during punishment for failure to investigate and present Wiggins evidence in mitigation.  Am. Pet., ECF No. 9, at 75.  This claim was first, and at best skeletally, presented in his second state writ.  SHCR-02 at 22.  There, Garcia proposed that his claim fit within the exception in Article 11.071 Section 5(a)(3), namely that by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in his trial

38

under Article 37.071, 37.0711, or 37.072.  SHCR-02 at 15.  The state court disagreed and found that "the allegations do not satisfy [these] requirements" and dismissed it as an abuse of the writ.  Ex parte Garcia, 2009 WL 2963752, at *1.  Garcia fails to overcome this procedural bar and his fourth claim should be dismissed as barred under adequate and independent state-law grounds.  Further, the evidence he now presents in support of this claim is factually unexhausted and cannot be considered by this Court.  Finally, his claim is meritless and unpersuasive.

A.    Garcia procedurally defaulted his Wiggins claim because the state court found that he failed to show actual innocence of the death penalty sufficient to be a gateway for the consideration of his successive claim's merits.

The Court of Criminal Appeals has stated "the Legislature quite obviously intended [Article 11.071 section 5(a)(3)], at least in some measure, to mimic the federal doctrine of "fundamental miscarriage of justice."  Ex parte Blue, 230 S.W.3d  151, 160 (Tex. Crim. App. 2007).  This federal doctrine operates to excuse procedural default, failure to exhaust, and failure to fully develop the evidentiary basis for a claim in state court, as well as successive or abusive federal writs, thus allowing the federal habeas petitioner to proceed on the merits of his claim where he would otherwise be barred.  See Murray v. Carrier, 477 U.S. 478, 496 (1986); Coleman, 501 U.S. at 750; Keeney v. Tamayo–Reyes, 504 U.S. 1, 11-12 (1992); Zant, 462 U.S. at 495.    In the context of capital-punishment proceedings, fundamental miscarriage of justice means "actual innocence of the death penalty." Wiggins, 539 U.S. 510 at 537-38; Sawyer v. Whitley, 505 U.S. 333, 348 (1992).

39

The Supreme Court has limited the application of innocence in this context to constitutional error that affects Garcia's eligibility for the death penalty under state law. It has expressly rejected the argument that a constitutional error that impacts only the jury's discretion whether to impose a death sentence upon a defendant who is unquestionably eligible for it under state law can be considered sufficiently fundamental as to excuse the failure to raise it timely in prior state and federal proceedings. Sawyer, 505 U.S. at 343-48. Likewise, the Texas scheme limits innocence in this context to that affecting Garcia's eligibility for the death penalty, not the jury's decision to impose it. Ex parte Blue, 230 S.W.3d at 160.

"If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim." Nobles, 127 F.3d at 420. In Rocha v. Thaler, the Fifth Circuit held that the Court of Criminal Appeals's determination that a state habeas application did not satisfy § 5(a)(3) was independent of the merits of the petitioner's Wiggins claim. 626 F.3d 815, 823 (5th Cir. 2010)(Petition for certiorari filed Mar 17, 2011, No. 10-9659). Only if the petitioner can show that he is actually innocent of the death penalty can a federal court proceed to consider the merits of the alleged underlying constitutional violation. If a petitioner cannot establish his actual innocence, a federal court cannot, and does not, consider the merits of his habeas claim. Id. at 824. Because Garcia's Wiggins claim is relevant only to the imposition question, and not to his eligibility for the death penalty (such as an Atkins or

40

Roper[15] claim), any alleged constitutional error on the part of counsel fails to create a gateway through which Garcia's procedurally defaulted and barred ineffectiveness claim can be considered on the merits.

Further, Garcia has the same factual exhaustion problems with this claim that he had with his Atkins claim.  In state court, he presented no affidavits from family or friends; no Child Protective Services (CPS) records, no doctor's report or other expert opinion, and made no argument about the family being unprepared to testify.  The new evidence he presents to this Court, for the first time in any court, is factually unexhausted and cannot be considered by this Court.  Pinholster, 2011 WL 1225705 at *8; Smith, 515 F.3d at 400; Morris, 379 F.3d at 204-05, and Dowthitt, 230 F.3d at 746.  "If the petitioner presents material evidentiary support for the first time in federal court, then he has not exhausted his state remedies." Smith, 515 F.3d at 400 (citing Morris).

Because Garcia failed to fully develop the factual bases of this claim in state court, he is precluded from further factual development in this Court because his claim neither relies on a new rule of constitutional law nor a factual predicate previously undiscoverable through the exercise of due diligence; and he did not even argue, much less establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty.  28 U.S.C. § 2254(e)(2).

Garcia can overcome the bar to federal relief only by showing cause and prejudice for his default, or that failure to consider the claims will result in a

---

[15]    Roper v. Simmons, 543 U.S. 551 (2005).

fundamental miscarriage of justice.  Coleman, 501 U.S. at 750; Wainwright, 433 U.S. at 87.  However, Garcia makes no argument against the procedural bar nor offers the Court any justification excusing his failure to present this claim in his first state writ.  Nor could he.

> B.   Nonetheless, his Wiggins claim is unpersuasive.  Counsel was not deficient.

Garcia contends his Sixth Amendment rights were violated because some witnesses were not contacted by the trial team, some CPS records were not uncovered, and others who did testify were not asked the right questions.  Am. Pet., ECF No. 9, at 75.  Additionally, Garcia faults trial counsel for not hiring a psychologist, who would have diagnosed Garcia with PTSD.  Id. at 79.  He hypothesizes that if counsel had "obtained critical family interviews, they would have known that [Garcia's] mental health symptoms warranted further investigation."  Id. at 83.  Garcia explicitly limits his claim to ineffective assistance of counsel during punishment, not guilt-innocence.  Id.

Garcia fails to demonstrate deficiency.  In order to establish that counsel were ineffective due to a failure to investigate the case, Garcia must do more than merely allege a failure to investigate—he must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial.  Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir 1994); Rose v. Johnson, 141 F.Supp.2d 661, 691 (S.D. Tex. 2001).  Here, Garcia points at a difference of degree.

Garcia asserts that counsel conducted a "perfunctory investigation" and

42

"did not attempt to present various witnesses or their detailed affidavits regarding . . . childhood abuse." Am. Pet., ECF No. 9, at 88-89. Garcia failed to raise this argument properly before the state court leaving the record undeveloped, but some useful information can be gleaned from the affidavit from one of the trial attorneys, offered in response to other IAC claims in the state court below. 2 SHCR 479-486. The state court found counsel's account of the defense investigation to be credible. 2 SHCR 501-05 (FF 56, 59, 62-66). Because his attorneys did conduct a thorough investigation into Garcia's possible mitigation case, they should not be found deficient.

According to counsel's affidavit, the two trial attorneys interviewed witnesses, talked to Garcia and his family, employed an experienced criminal investigator and a mitigation specialist, reviewed the State's file, and obtained discovery from the State. 2 SHCR 479-81. Both attorneys talked with Garcia, his parents, and his relatives "about his background and life to obtain mitigating evidence." Id. at 479-80. Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies. Richter, 131 S. Ct. at 789; Knowles, 129 S.Ct. at 1421-22; Rompilla v. Beard, 545 U.S. 374, 383 (2005); Wiggins, 539 U.S. at 525; Strickland, 466 U.S. at 699. They interviewed Garcia, his mother, and his sister about the stepfather's sexual and physical abuse of Priscilla and Garcia. Id. at 482. Garcia's mother specifically told the defense team about the "so-called 'old world' Mexican custom of 'comfort touching' where a relative would soothe a fretful child by touching his genitals." Id. At trial, the defense presented mitigation testimony, including the allegations of physical and sexual abuse of

43

Garcia and his sister, from eight witnesses including Garcia's mother, both sisters, his stepfather, his wife, and the decedent's widow. Id. There is no evidence in the record which would indicate that defense counsel was unaware of the CPS records, and counsel presented testimony regarding CPS's actions towards the family which would indicate these records or their contents were well-known. Additionally, Dr. Quijano testified in mitigation about the likely effects on Garcia of the sexual abuse— anger and the impairment of free will and choice. 24 RR 58-59, 73-78.

Although some witnesses were not called to testify—including his ex-girlfriend's mother, a cousin, and a teacher—their contributions would be largely duplicative of what counsel did elicit, and may have believed he would elicit, from the witnesses he did call to the stand. At best they vary by degree only. Of course postconviction counsel can help a witness paint a more colorful picture of the past when sitting calmly and privately writing out an affidavit as opposed to what trial counsel was able to get, due to the tension and nerves incited by live testimony in a public trial for capital murder— but this does not mean by itself that counsel was unaware of the facts or was not hoping to elicit those facts from the witnesses. "We must be particularly wary of arguments that essentially come down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second guessing." Skinner v. Quarterman, 576 F.3d 214, 220 (5th Cir. 2009) (quoting Dowthitt, 230 F.3d at 743). "Reliance on 'the harsh light of hindsight' to cast doubt on a trial that took place . . . years ago is precisely what Strickland and AEDPA seek to prevent." Richter, 131 S. Ct. at

44

789; Cone, 535 U.S. at 702; see also Lockhart, 506 U.S. at 372.

Ultimately, Garcia's failure to properly present this claim in the state courts forces this Court to deny the claim without further factual development. 28 U.S.C.A. § 2254(e)(2). Garcia's lack of diligence in developing the factual basis for this claim constitutes "failure" and is sufficient to trigger the restrictive requirements of this subsection. (Michael) Williams, 529 U.S. at 430. In this regard, diligence "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue the claim in state court." Id. at 435. Likewise, a "reasonable attempt" requires that an applicant affirmatively seek an evidentiary hearing in state court in the manner prescribed by state law. Id. at 437. "Mere requests for evidentiary hearings [in state court] will not suffice; the petitioner must be diligent in pursuing the factual development of his claim." Dowthitt, 230 F.3d at 758.

Garcia does not show that the claims involve a new rule of constitutional law or facts that could have reasonably been discovered earlier. See § 2254(e)(2)(A). Nor does he show that the facts underlying his claims establish by clear and convincing evidence that but for constitutional error no reasonable fact finder would have found him guilty of capital murder. See § 2254(e)(2)(B). Garcia is not entitled to a federal evidentiary hearing. And while unexhausted claims may be denied on the merits, the converse does not hold true—relief may not be granted on unexhausted claims. Mercadel v. Cain, 179 F.3d 271, 276-78 (5th Cir. 1999); Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("[a]lthough AEDPA authorizes the district court to deny relief on an

unexhausted claim, it does not authorize a district court to grant relief on an unexhausted claim, unless the State, through counsel, expressly waives the requirement [under § 2254(b)(3)].") (internal citations omitted, original emphasis).

C.    Further, Garcia fails to demonstrate prejudice.

Garcia presents two affidavits from jurors to attest to the effect of Garcia's new evidence on their verdicts. The Fifth Circuit has found such affidavits to be inadmissible in exactly this context. "The post-verdict inquiry of jury members, as live witnesses or by affidavit, is inappropriate and precluded by Federal Rules of Evidence 606(b)."[16] Williams v. Collins, 16 F.3d 626, 636 (5th Cir. 1994); see also Byrne v. Butler, 845 F.2d 501, 509-10 n. 8 (5th Cir. 1988); McQueen v. Blackburn, 755 F.2d 1174, 1178-79 (5th Cir.1985). Such affidavits would also be inadmissible in state court. Tex. R. Crim. Evid. 606(b).

Nevertheless, Garcia has not shown a reasonable probability that but for

---

[16]    Federal Rule of Evidence 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

trial counsel's performance, the outcome would have been different. Parr v. Quarterman, 472 F.3d 245, 257 (5th Cir.2006); Ransom v. Johnson, 126 F.3d 716, 723-24 (5th Cir.1997); cf. Wiggins, 539 U.S. at 534-35 (holding that counsel's failure to investigate and present evidence that the petitioner "suffered physical torment, sexual molestation, and repeated rape during his subsequent years in foster care" was unreasonable and prejudiced the petitioner).

For example, in Parr, the petitioner presented postconviction affidavits from witnesses describing his difficult home life as a child, replete with abuse and abandonment, as well as undiscovered CPS records, psychological evaluations diagnosing Parr as emotionally disturbed, depressed, and learning disabled, and testimony about his father's abuse of his mother. 472 F.3d at 257. However, Parr was found not to have "show[n] that his proposed mitigating evidence of ... a troubled family life raises more than a mere possibility of a different outcome, and not the required reasonable probability." Id. (quoting Lamb v. Johnson, 179 F.3d 352, 360 (5th Cir.1999) (internal quotation marks omitted)).  The Fifth Circuit assessed the prejudice argument as follows:

> Additionally, though perhaps not as effectively as it might have been, the jury did hear evidence regarding Parr's unstable childhood from both Dr. Jennings and Saldierna. Further, the State's case on punishment was strong. In addition to the facts of the crime, the State presented evidence of Parr's prior convictions for burglary and assault, Maria Cervantes testified that Jimenez told her that he and Parr shot Malek in the back of the head twice and planned to kill the children but the gun "messed up," and Parr's parole officer testified that Parr was on parole from the Texas Youth Commission when this crime was committed. The district court correctly concluded that Parr could not show prejudice and thus, was not entitled to relief on this ground.

47

Id. at 258.

Likewise, given the overwhelming evidence of guilt and blameworthiness—including Garcia's confession, the sympathetic qualities of the victim (a missionary and hardworking father of two) and the circumstances of the offense itself, and, at punishment, Garcia's lengthy criminal history and violent behavior while incarcerated— there is no reasonable probability that the jury would answer future dangerousness with a "no" or mitigation with a "yes," even if counsel had presented a PTSD expert and the slightly more colorful punishment case as Garcia vaguely suggests. Most of these additional witnesses were called anyway. Because counsel did conduct an investigation into mitigating evidence, Garcia's argument "essentially comes down to a matter of degrees." Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir. 1999). In Kitchens, the Fifth Circuit held that "[t]hose questions are even less susceptible to judicial second-guessing." Id.

Significantly, the evidence of Garcia's future dangerousness was overwhelming. When that is the case, it is virtually impossible to establish prejudice. E.g., Strickland, 466 U.S. at 698 (no prejudice due to State's overwhelming evidence on aggravating factors supporting death penalty); Ladd v. Cockrell, 311 F.3d 349, 360 (5th Cir. 2002); Santellan, 271 F.3d at 198; Jones v. Johnson, 171 F.3d 270, 277 (5th Cir. 1999)(no prejudice due to brutal facts of murder); Russell v. Lynaugh, 892 F.2d 1205, 1213 (5th Cir.1989) (no ineffective assistance "[g]iven the weakness of such testimony when juxtaposed with the overwhelming evidence of guilt, the horrifying nature of the crime, and the abundant impeachment material available to the state"). Counsel put on a

strategic defense during the guilt and sentencing phases. Counsel also defended his client at the sentencing phase. The law does not require counsel to raise every available nonfrivolous defense. See Jones v. Barnes, 463 U.S. 745, 751 (1983); cf. Wiggins, 539 U.S. at 533 (explaining, in case involving similar issue of counsel's responsibility to present mitigating evidence at sentencing, that "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant ... [or even to] present mitigating evidence at sentencing in every case").

Because this claim is factually and legally unexhausted and procedurally defaulted under state law, this Court cannot grant relief. Garcia's IAC claim should be dismissed.

V.   Garcia's Unpersuasive Claim That Appellate Counsel Was Ineffective for Failing to Appeal on the Basis of Claim Four Above is Also Unexhausted and Procedurally Barred.

Garcia's last claim accuses appellate counsel of ineffective assistance for failure to appeal on the basis of trial counsel's alleged ineffectiveness for not presenting additional Wiggins evidence in mitigation. Am. Pet., ECF No. 9, at 93. This claim was first, and only minimally, presented in his second state writ. SHCR-02 at 30. Garcia implied that this claim also fit within the exception in Article 11.071, Section 5(a)(3). SHCR-02 at 15. The state court disagreed and found that "the allegations do not satisfy [these] requirements" and dismissed it as an abuse of the writ. Ex parte Garcia, 2009 WL 2963752, at *1. Garcia fails to overcome this procedural bar and his last claim should be dismissed as

barred under adequate and independent state-law grounds. In addition, his claim is meritless and unpersuasive.

> A.   Garcia procedurally defaulted his appellate IAC claim because the state court found that he failed to show actual innocence of the death penalty sufficient to be a gateway for the consideration of his successive claim's merits.

The Court of Criminal Appeals has stated "the Legislature quite obviously intended [Article 11.071 section 5(a)(3)], at least in some measure, to mimic the federal doctrine of "fundamental miscarriage of justice." Ex parte Blue, 230 S.W.3d at 160. This federal doctrine operates to excuse procedural default, failure to exhaust, and failure to fully develop the evidentiary basis for a claim in state court, as well as successive or abusive federal writs, thus allowing the federal habeas petitioner to proceed on the merits of his claim where he would otherwise be barred. See Section IV (A), infra. In the context of capital-punishment proceedings, fundamental miscarriage of justice means "actual innocence of the death penalty." Wiggins, 539 U.S. 510 at 537-38; Sawyer, 505 U.S. at 348.

However, Garcia betrays a fundamental misunderstanding of the procedural default doctrine and its interaction with "fundamental miscarriage of justice" versus the prejudice analysis of an appellate IAC claim. Am. Pet., ECF No. 9, at 93. Garcia claims "there is a reasonable probability that, but for appellate counsels' errors, Mr. Garcia's conviction or death sentence would have been reversed on direct appeal." Id. He never articulates any argument that would explain how his belated claim fits within the Article 11.071, Section 5(a)(3) exception to the state successive writ bar. Id. at 93-94; SHCR-02 at 14,

30-32.  In the state court, Garcia argued two reasons why his second state writ should not be barred as successive: new law, regarding the Atkins and Philip Morris claims, and the fundamental miscarriage of justice exception in Section 5(a)(3), regarding his Wiggins claim.  SHCR-02 at 14. He never explained how, but for alleged constitutional error on the part of appellate counsel, "rational jurors would not have answered one or more of the special issues . . . in the State's favor." Id. at 15.  Therefore even assuming arguendo the Wiggins claim was not procedurally defaulted, by his logic his appellate IAC claim surely would be.

This is because, as argued previously, the Supreme Court has limited the application of innocence in this context to constitutional error that affects Garcia's eligibility for the death penalty under state law.  Appellate error would not affect Garcia's eligibility for the death penalty.  One could rephrase existing law with the unusual procedural posture Garcia presents as such: the Supreme Court has expressly rejected the argument that a constitutional error that impacts only the appellate court's discretion whether to order a new penalty phase, for a defendant who is unquestionably eligible for death under state law, can be considered sufficiently fundamental as to excuse the failure to raise it timely in prior state and federal proceedings.  This is a great stretch, however, and further proves the Director's point that Garcia fails to overcome his procedural default of this claim because he has no argument permitting this Court to consider it.

Garcia's second state writ was dismissed as an abuse of the writ.  "If a state court clearly and expressly bases its dismissal of a prisoner's claim on a

51

state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim." Nobles, 127 F.3d at 420. The Fifth Circuit held that the Court of Criminal Appeals's determination that a state habeas application did not satisfy Section 5(a)(3) was independent of the merits of the petitioner's claim. Rocha, 626 F.3d at 823. Only if the petitioner can show that he is actually innocent of the death penalty can a federal court proceed to consider the merits of the alleged underlying constitutional violation. If a petitioner cannot establish his actual innocence, a federal court cannot, and does not, consider the merits of his habeas claim. Id. at 824. Because Garcia's appellate IAC claim is relevant only to the imposition question, and not to his eligibility for the death penalty (such as an Atkins or Roper claim), any alleged constitutional error on the part of appellate counsel fails to create a gateway through which Garcia's procedurally defaulted and barred claim can be considered on the merits.

Garcia can overcome the bar to federal relief only by showing cause and prejudice for his default, or that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; Wainwright, 433 U.S. at 87. However, Garcia makes no argument against the procedural bar nor offers the Court any justification excusing his failure to present this claim in his first state writ.

B.      Nonetheless, his appellate IAC claim is unpersuasive.

With an ineffective-assistance-of-counsel-on-appeal claim, a petitioner must satisfy the two-pronged test enunciated in Strickland. Smith v. Robbins, 528 U.S. 259, 285 (2000)(proper standard for evaluating appellate counsel is

52

Strickland). Thus, Garcia must demonstrate counsel was deficient, and that the deficiency prejudiced his case. Strickland, 466 U.S. at 687. Counsel's assistance becomes ineffective when counsel's errors are prejudicial, in that there is a reasonable probability that but for the error the ultimate result would have been different. To prove prejudice, a petitioner must show that but for counsel's deficient performance "he would have prevailed on appeal." Smith v. Robbins, 528 U.S. at 285.

Garcia has failed to prove a deficient performance or prejudice by this allegation. The Fifth Circuit has held that appellate counsel's failure to raise certain issues on appeal does not deprive an appellant of effective assistance of counsel where the petitioner did not show the existence of any trial errors with even arguable merit. Hooks v. Roberts, 480 F.2d 1196, 1198 (5th Cir. 1973). Further, in Jones v. Barnes, the Supreme Court noted the federal district court's holding on this issue, as follows: "It is not required that an attorney argue every conceivable issue on appeal, especially when some may be without merit. Indeed, it is his professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach."[17] 463 U.S. at 749. The Supreme Court went on to hold that "[n]either Anders[18] nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional

_____

[17]    Some claims are best addressed during habeas by going outside the trial record, including claims of ineffective assistance of counsel. Therefore, to raise them on direct appeal, and have them rejected, exposes the claim to the 'raised-and-rejected-on-direct-appeal' bar needlessly, while preventing them from being fully factually developed as they could be on state habeas.

[18]    Anders v. California, 386 U.S. 738 (1967).

right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Id. 463 U.S. at 751.  Because Garcia failed to establish any merit for his Wiggins claim, it cannot be error for appellate counsel not to appeal on such grounds.

CONCLUSION

Given Garcia's failure to exhaust four out of his five claims, and his procedural default of all, combined with the deference due the state court's factual findings and Garcia's failure to show that the state court misapplied clearly established federal law or wrongly determined the facts, his claims for relief must fail.  For the foregoing reasons, Garcia's petition for writ of habeas corpus should be denied and the Director's motion for summary judgment should be granted.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Postconviction Litigation Division

\*      /s/ Georgette P. Oden
        GEORGETTE P. ODEN
        Assistant Attorney General

54

*Attorney-in-charge
State Bar No. 24029752

P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
(512) 936-1400
facsimile (512) 320-8132
Georgette.Oden@oag.state.tx.us

## CERTIFICATE OF SERVICE

I do hereby certify that on April 7, 2011, I electronically mailed a copy of this pleading to Counsel for Garcia at the following address: ddow@central.uh.edu and in addition, mailed a paper copy to Counsel at:

David R. Dow
University of Houston Law Center
100 Law Center
Houston TX 77204

/s/ Georgette P. Oden
GEORGETTE P. ODEN
Assistant Attorney General

55