*73 804*

NO. 73,804

IN THE COURT OF CRIMINAL APPEALS

FOR THE STATE OF TEXAS

AT AUSTIN

\* \* \*

JUAN MARTIN GARCIA

*Appellant*

*vs.*

THE STATE OF TEXAS

*Appellee*

\* \* \*

APPELLANT'S BRIEF

---

On Appeal in Cause No. 797,602
from the 185th Judicial District Court of Harris County, Texas

---

FLOYD W. FREED, III
6630 Cypresswood Dr., Suite 200
Spring, Texas 77379
Telephone: (281) 374-8886
Fax: (281) 379-6916
State Bar No. 07413500
ATTORNEY FOR APPELLANT
(ON APPEAL ONLY)

ORAL ARGUMENT REQUESTED

FILED IN
COURT OF CRIMINAL APPEALS

NOV 0 6 2000

Troy C. Bennett, Jr., Clerk

NO. 73,804

# IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS
### AT AUSTIN

\* \* \*

## JUAN MARTIN GARCIA

*Appellant*

*vs.*

## THE STATE OF TEXAS

*Appellee*

\* \* \*

## APPELLANT'S BRIEF

---

On Appeal in Cause No. 797,602
from the 185th Judicial District Court of Harris County, Texas

---

FLOYD W. FREED, III
6630 Cypresswood Dr., Suite 200
Spring, Texas 77379
Telephone: (281) 374-8886
Fax: (281) 379-6916
State Bar No. 07413500
ATTORNEY FOR APPELLANT
(ON APPEAL ONLY)

## ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex.R.App.P. 74(a), a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Appellant**

> **JUAN MARTIN GARCIA**
> TDCJ-ID Inmate, Death Row

**Complainants Named in Indictment, Deceased**

> **HUGO SOLANO**

**Defense Attorneys at Trial**

> **STEPHANIE MARTIN**
> 3231 Houston Ave
> Houston, Texas 77009
> Tel: 713 862 7997
> SBN: 00787973

> **RONALD NELSON HAYES**
> 405 Main, Suite 303
> Houston, Texas 77002
> Tel: 281 524 7670
> SBN: 09280000

**Prosecutors at Trial**

> **MR IRA JONES**
> SBN: 10992500
> **MR DONALD SMYTH**
> SBN: 18777700
> 1201 Franklin, Suite 600
> Houston, Texas 77002
> Tel: 713 755 5800

ii

**Presiding Judge**

      **HONORABLE  SUSAN BAETZ BROWN**
      185TH District Court
      1201 Franklin Street
      Houston, Texas 77002

**District Attorney - Prosecutor on Appeal**

      **JOHN B. HOLMES, JR.**
      District Attorney
      1201 Franklin,  Suite 600
      Houston, Texas 77002

**Attorney on Appeal**

      **FLOYD W. FREED, III**
      6630 Cypresswood Drive, Suite 200
      Spring, Texas 77379
      Telephone: (281) 374-8886
      State Bar No. 07413500

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................................ii

INDEX OF CASES AND AUTHORITIES.................................................................:v

STATEMENT REGARDING ORAL ARGUMENT .......................................................2

STATEMENT OF THE CASE .......................................................................................3

ISSUES PRESENTED....................................................................................................4

STATEMENT OF THE FACTS .....................................................................................5

SUMMARY OF THE ARGUMENTS ............................................................................9

POINT OF ERROR ONE ............................................................................................. 10

POINT OF ERROR TWO............................................................................................. 14

POINT OF ERROR THREE.......................................................................................... 24

PRAYER FOR RELIEF................................................................................................. 26

CERTIFICATE OF SERVICE...................................................................................... 26

# INDEX OF AUTHORITIES

*Barnes v. State,*
876 SW 2d 316 (Tex.Crim.App 1994) ................................................................ 18

*Baston v. Kentucky,*
476 US 79 (1986) .............................................................................................. 11

*Butler v. State,*
716 SE 2d 48,54 (Tex.Crim.App. 1986) .............................................................. 12

*Cannon v. State,*
668 SW 2d 401, 403 (Tex.Crim.App. 1984) ....................................................... 12

*Ex parte Felton,*
815 SW 2d 733, 735 9Tex.Crim.App. 1991) ...................................................... 12

*Fuentes v. State,*
991 SW 2d 267, 280 (Tex.Crim.App 1999) ........................................................ 23

*Gray v. Mississippi,*
481 US 648 (1987) ............................................................................................. 13

*Ham v. South Carolina,*
409 US 524 (1973) ............................................................................................. 11

*Haynes v. State,*
790, SW 2d 824, 827 (Tex.App. – Austin 1990) ................................................ 12

*Keeton v. State,*
724 SW 2d 58, 61 (Tex,Crim.App. 1987) ........................................................... 18

*Kutzner v. State,*
994 SW 2d 180, 188 (Tex.Crim.App. 1999) ....................................................... 23

*Jackson v. State,*
766 SW 2d 504 (Tex.Crim.App. 1985) ............................................................... 12

*McDuff v. State,*
939 SW 2d 607, 620 (Tex.Crim.App. 1997) ....................................................... 21

v

*McGinn v. State,*
961 SW 2d 161, 176 (Tex.Crim.App. 1998)..................................................... 23

*Murray v. Varrier,*
477 US 478, 496, 106 S.Ct. 2639, 91 L. Ed 2d 397 (1986)............................. 12

*Nenno v. State,*
970 SW 2d 549 (Tex.Crim.App. 1998)........................................................... 20

*Robinson v. State,*
548 SW 2d 63, 64 (Tex.Crim.App. 1977)....................................................... 18

*Rodney v. State,*
632 SW 2d 598, 661 (Tex.Crim.App. 1982)................................................... 18

*Rose v. Clark,*
478 US 570, 587 (1986)................................................................................. 13

*Simmons v. South Carolina,*
512, US 154, 114 S.Ct. 2187, 129 L. Ed 2d. 133 (1994)................................. 22

*Smith v. State,*
894 SW 2d 876, 879 (Tex.App. – Amarillo 1995) *pet ref'd*............................ 12

*Stoker v. State,*
788 SW 2d 1, 7 (Tex.Crim.App. 1989),
*cert denied* US 951 (1990) ........................................................................... 18

*Strauder v. West Virginia,*
100 US 303 (1880)........................................................................................ 11

*Strickland v. Washington,*
466 US 668, 687, 694, 104 S.Ct. 2052, 2064,
2068, 80 L Ed. 2d 674 (1984) ...................................................................... 12

*Turner v. Murray,*
476 US 28, 35-36 (1986)........................................................................... 11,13

*U.S. v. Martinez-Salanga,*
120 S.Ct. 774, 781 (2000) ............................................................................ 11

*Vasquez v. Hillery,*
474 US 254 (1986) .................................................................................. 11

*Wilkerson v. State,*
726 SW 2d 542, 548 (Tex.Crim.App. 1986) ....................................... 11

*Zant v. Stephens,*
462 US 862,885 (1983) ........................................................................... 11

## TEXAS RULES OF APPELLATE PROCEDURE

Rule 74 (a) ............................................................................................. 11
Rule 39.1 ................................................................................................. 2

## VERNON'S ANNOTATED CODE OF CRIMINAL PROCEDURE

Article 37.071 (h) .................................................................................... 3
Article 37.071 Section 2 (b) ........................................................... 11,18,25
Article 44.29 .......................................................................................... 25

NO. 73,804

# IN THE COURT OF CRIMINAL APPEALS
# FOR THE STATE OF TEXAS
# AT AUSTIN

\* \* \*

## JUAN MARTIN GARCIA

*Appellant*

*vs.*

## THE STATE OF TEXAS

*Appellee*

\* \* \*

### APPELLANT'S BRIEF

On Appeal in Cause No. 792,602
from the 185TH Judicial District Court of Harris County, Texas

TO THE HONORABLE JUDGES OF THE COURT CRIMINAL APPEALS:

COMES NOW, JUAN MARTIN GARCIA, Appellant herein, by and through his appointed attorney on appeal only, FLOYD W. FREED, III, and files this his Appellant's Brief in this capital murder case. In support thereof, he would respectfully show the Court the following:

1

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex.R.App.P. 39.1, the Appellant does request oral argument.

## STATEMENT OF THE CASE

This is an automatic appeal from Appellant's capital murder conviction and death sentence.  Art. 37.071(h), V.A.C.C.P.

In the complaint filed on November 9th 1998, Appellant was charged with capital murder in the course of committing and attempting to commit robbery alleged to have been committed on September 17th 1998 (C.R. p. 2). Appellant was arrested and held without bond.  The grand jury indicted Appellant on January 28th 1999 (C.R. p. 6).

Upon his plea of not guilty, Appellant was tried and convicted of capital murder (R.R. Vol 20, p.64).

The jury answered the two statutory special issues "Yes" and "No" resulting in the mandatory imposition of the death penalty (R.R. Vol 26, pp. 6-7). There was not a motion for new trial.

Counsel was appointed on appeal and Appellant's brief is timely filed by placing in the United States Mail on November 3rd 2000.

## ISSUES PRESENTED

**TRIAL COUNSELS' RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL· IN ELICITING APPELLANT'S HISPANIC HERITAGE BY DR WALTER QUIJANO AS A FACTOR TO DETERMINE APPELLANTS'S FUTURE DANGEROUSNESS IN THE PUNISHMENT PHASE OF THE TRIAL**

**THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THE PROBABILITY THAT APPELLANT WOULD CONSTITUTE A CONTINUING THREAT TO PRISON SOCIETY FOR 40 YEARS AND/OR THAT AFTER THAT TIME, IF RELEASED, HE WOULD CONSTITUTE A CONTINUING THREAT TO FREE SOCIETY**

**THE TRIAL COURT REVERSIBLY ERRED IN NOT CHARGING THE JURY THAT EXTRANEOUS OFFENSES BE PROVED BY THE STATE OF TEXAS BEYOND A REASONABLE DOUBT**

4

## STATEMENT OF FACTS

The evidence adduced at Trial by the State of Texas and the Defendant revealed the following to the Judge and jury:

On or about September 17, 1998 at approximately 5:00 a.m. Marte McDowell, an off duty Houston Police Officer, heard four to five gun shots at the Country Club Apartments where he lived and worked as a security guard.  He investigated and found the Complainant, Hugo Solano, dead in a vehicle. (R.R. Vol. 17, pp. 11-17).

The crime scene was processed by Detective Ben Beall of the Harris County Sheriff's Department wherein 25 caliber shell casings were recovered (R. R. Vol. 19, pp. 103-123).

On September 28, 1998, Harris County Sheriff's Deputy, Denny Dwayne Coker, observed a 1981 Oldsmobile with a defective headlight.  After executing a traffic stop, he observed the Defendant as a passenger.  He was asked to exit the vehicle and in so doing the officer heard an object strike the metal floor of the vehicle.  The object was a 25 caliber pistol. R.R. Vol. 17, pp. 105-112)

The gun was seized by the deputies and sent to the gun property locker.  The pistol was examined by David Tanner of the Montgomery County Sheriff's Office where it was matched to shell casings recovered at the scene of the shooting of Mr. Solano.  (R. R. Vol. 17, pp. 122-147).

Eleazar Mendoza, a co defendant herein, testified that he was present at the time that Mr. Solano was shot in an aborted robbery.  He related that he drove the vehicle

5

while the Defendant, Juan Martin Garcia, approached the van driven by Mr. Solano. He saw the Defendant shoot Mr. Solano in the face. (R.R. Vol. 17, pp. 149-171 & resumes Vol 19, pp. 5-44)

Paul Daily testified that he knew the Defendant and that he resided with him for a brief period of time around the date of the shooting of Mr. Solano. He saw the Defendant in possession of a 25 caliber pistol which Mr. Garcia allegedly admitted he used to shoot a Hispanic male in the face for Eight (8) dollars. (R. R. Vol. 19, pp. 55-68).

Detective Alex Oriz of the Harris County Sheriff's Department testified that he obtained a voluntary written statement, State's Exhibit No. 2, from the Defendant, Juan Martin Garcia, wherein he admitted the robbery and shooting of Hugo Solano. The Statement was published to the jury. (R. R. Vol. 19, pp. 68-94)

In addition, a video statement, redacted for the guilt/innocence phase of the trial, was taken by Gary Johnson, an investigator for the Harris County District Attorney's Office (R.R. Vol. 19, pp. 123-131). The statement was taken under the direction of Mr. Mike Anderson, an Assistant District Attorney of the Harris County District Attorney's Office. (R. R. Vol. 19, pp. 131-134). The statement was admitted into evidence.

The State of Texas rested in the guilt/innocence phase of the trial.

The Defendant, Juan Martin Garcia, did not testify on his own behalf and only recalled Gary Johnson to add additional evidence in regards to the video statement. (R. R. Vol. 20, pp. 7-21)

The Defendant rested in the guilt/innocence phase of the trial.  (R. R. Vol. 20, p. 49)

The Defendant, Juan Martin Garcia, was found guilty of Capital Murder as charged in the indictment (C. R. p. 6) (R.R. Vol. 20, p. 64)

At the punishment phase of the trial, the State of Texas offered testimony of numerous robberies attributed to Defendant, Juan Martin Garcia: Jason Jett (R. R. Vol. 21, pp. 34-59); Matthew Henderson (R.R. Vol. 21, pp. 59-70); Raulot Lockett (R. R. Vol. 21, pp. 73-83); Bruce Rose (R. R. Vol. 21, pp. 84-97); David Venables (R. R. Vol 21, pp. 97-112); James Issac (R. R. Vol. 21, pp. 126-145); Kevin Nunn (R. R. Vol. 21, pp. `48-162);  Angie Allen (R. R. Vol. 21, pp. 163-172); Benjamin Garcia (R. R. vol. 22, pp. 53-58); Roy Nowlin (R. R. Vol. 22, pp. 58-70); Ascio Mesa (R. R. Vol .22, pp. 74-90); and Ozzie Brown (R. R. Vol .22, pp. 91-109)

In addition, the State of Texas called to testify Patrick Michael Meece who related that he was kicked and beaten while a prisoner in the Harris County Jail by the Defendant, Juan Martin Garcia and fellow inmates.  (R. R. Vol. 21, pp. 179-199 to Vol 22, pp. 13-31)

The State of Texas rested in the punishment phase of the trial.  (R. R. Vol. 22, p. 117)

The Defendant, Juan Martin Garcia, called to testify in the punishment phase of the trial the following character witnesses: Esther Garcia (R. R. Vol. 22, pp.  118-163); Johnny Sierra (Vol 22, pp. 164-186); Prescilla Garcia ( R. R. Vol. 22, pp. 187-199);

7

Alexandra Garcia (R. R. Vol. 23, pp. 12-37 & Vol 23, pp. 87-95);and Heidy Ivette Garcia (R. R. Vol. 23, pp. 37-60).

The Defendant called to testify Walter Quijano, a clinical psychologist, regarding the future dangerousness of Juan Martin Garcia. (R. R. Vol. 23, pp. 108-149 & Vol 24, pp. 5-78)

The Defendant rested in the punishment phase of the trial. ( R. R. Vol. 24, p. 97)

The State of Texas rested and closed in the punishment phase of the trial. ( R. R. Vol. 24, pp. 129)

The jury found the answers to Special Issue No. 1 was yes and Special Issue No. 2 to be no. (R. R. Vol. 26, pp. 6-7)

The Court thereupon according to law, sentenced the Defendant, Juan Martin Garcia, to death. (R. R. Vol. 26, p. 9)

## SUMMARY OF THE ARGUMENTS

Ineffective assistance was rendered to the Appellant in that his counsel utilized his Hispanic heritage before the jury in the punishment phase of the trial where such members of the Hispanic origin are more dangerous.

The State of Texas did not meet it's burden of proof in regards to the future dangerousness of the Appellant in answering special issues in the punishment phase of the trial.

The jury should have been charged as to the burden of proof beyond a reasonable doubt for the extraneous offenses introduced by the State of Texas at punishment.

9

## POINT OF ERROR ONE

**TRIAL COUNSELS' RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN ELICITING APPELLANT'S HISPANIC HERITAGE BY DR WALTER QUIJANO AS A FACTOR TO DETERMINE APPELLANT'S FUTURE DANGEROUSNESS IN THE PUNISHMENT PHASE OF THE TRIAL**

In the punishment phase of the Appellant's trial after being convicted of capital murder, the Appellant's trial counsels called to testify Dr Walter Quijano, a Clinical Psychologist (R.R. Vol 23, pp.108-149 and Vol 24, pp. 5-78). Dr Quijano has a bachelor's degree in general psychology, a master's degree in clinical psychology and a PhD doctorial degree also in clinical psychology (R.R. Vol 23, p. 109).

Defense counsel immediately asked Dr Quijano "Are there certain factors that contribute to someone's dangerousness in society?" De Quijano replied "Yes" (R.R., Vol 23, p.111). He testified as to three groups of factors. The first is called statistical. The second group called environmental and the third group is called clinical (R.R. Vol 23, pp. 111-112). In eliciting testimony regarding statistical factors, counsel for the Defendant asked "What about whether or not someone is black, white, Hispanic, does that play a role", Dr Quijano replied " The race plays a role in that the ..............among dangerous people, minority people are over represented in this population. And, so, blocks of Hispanics are over represented in this population" (R.R. Vol 23, p. 112).

The State of Texas did not object to the racially based testimony of Dr Quijano.

The Appellant, Juan Martin Garcia is of Hispanic origin.

The jury was asked to find unanimously that there is a probability that the Defendant will commit future acts of criminal violence that would constitute a continuing

10

threat to society.   Tex Code Crim. App. Ann. art 37.071 Section 2 (b) (Vernon Supp. 2000).

The jury was tacitly asked to consider race and ethnic stereotypes in order to determine future dangerousness.

In *Zant v. Stephens,* 462 US 862, 885 (1983) the Supreme Court held that factors such as race, religion or political affiliation of the Defendant are constitutionally impermissible and irrelevant, aggravating factors in determining whether to assess the death penalty.   The court held that in such instances, due process would require that the death penalty be set aside. *Id.*

The introduction of race or ethnicity into the punishment phase of any trial as an aggravating factor is *always* improper and is fundamental error.   Further, the trial court should immediately realizing it, and it should be stopped sua sponte.   Discrimination based on the Defendant's ethnicity is equally as impermissible as discrimination based on race.   *U.S. v. Martinez-Salanga*, 120 S. Ct. 774, 781 (2000).   Further, racial bias has resulted in reversals.   See a.g. *Turner v. Murray*, 476 US 28 (1986); *Vasquez v. Hillery,* 474 US 254 (1986); *Baston v. Kentucky* 476 US 79 (1986); *Ham v. South Carolina,* 409 US 524 (1973); *Strauder v. West Virginia*, 100 US 303 (1880).

Appellant's trial counsels' introduction of Appellant's ethnicity before the jury did not   render reasonably effective assistance of counsel in determining his future dangerousness.

A Defendant is entitled to reasonable effective assistance of counsel *Wilkerson v.*

11

*State,* 726 SW 2d 542, 548 (Tex.Crim.App. 1986).

In order to show that his counsel was ineffective, Appellant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense to such an extent that confidence in the outcome of the proceedings is undermined *Strickland v. Washington*, 466 US 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 80 L Ed. 2d 674 (1984). The question to be decided is whether counsel's conduct so undermined the adversarial process that the trial cannot be relied on as having produced a just result *Butler v. State*, 716 SE 2d 48, 54 (Tex.Crim.App. 1986).

Appellant has the burden of establishing ineffective assistance according to these standards *Haynes v. State*, 790, SW 2d 824, 827 (Tex. App. – Austin 1990).

Generally, there is a presumption that counsel rendered professional, competent assistance, that his actions were taken in pursuit of a sound trial strategy. *Smith v. State* 894 SW 2d 876, 879 (Tex.App. – Amarillo 1995) pet. ref'd. However, an Appellant can overcome this presumption.

Appellant has the burden of proving by a preponderance of the evidence that counsel was ineffective *Cannon v. State* 668 SW 2d 401, 403 (Tex.Crim.App. 1984) The appellate court has to look to the totality of the representation in evaluating its effectiveness of counsel *Ex parte Felton*, 815 SW 2d 733, 735 (Tex. Crim App – 1991).

However, it is possible that an error can be so egregious as to constitute ineffective assistance of counsel *Jackson v. State*, 766 SW 2d 504 (Tex.Crim.App – 1985); *Murray v. Varrier*, 477 US 478, 496, 106 S. Ct. 2639, 2649, 91 L Ed 2d 397 (1986). By

12

these standards, Juan Martin Garcia received ineffective assistance of counsel.

First, trial counsels' brought Appellant's Hispanic heritage before the jury by an expert witness of their own choosing and elicited that such was a factor that made him a future danger. This is not trial strategy. The decision was not reasonable.

Second, the harm to the Appellant was significant. Harm should be presumed that in a socially biased jury is a fundamental flaw and cannot be subjected to harmless error review *Gray v. Mississippi*, 481 US 648 (1987). Certain errors are not amenable to harmless error review because they involve rights that protect important values that are unrelated to the truth-seeking function of the trial *Rose v. Clark*, 478 US 570, 587 (1986).

Further, the unique nature of the death penalty requires a greater scrutiny *Turner v. Murray*, 476 US 28, 35-36 (1986).

Hence there is a reasonable probability that but for counsel's unprofessional error, the result herein would have been different.

The sentence of the trial court should be vacated and the cause remanded for retrial or punishment.

13

### POINT OF ERROR TWO

**THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THE PROBABILITY THAT APPELLANT WOULD CONSTITUTE A CONTINUING THREAT TO PRISON SOCIETY FOR 40 YEARS AND/OR THAT AFTER THAT TIME, IF RELEASED, HE WOULD CONSTITUTE A CONTINUING THREAT TO FREE SOCIETY**

<u>Summary of Argument</u>

This court must confront directly the nature of the State's burden of proof on the continuing threat special issue when the jury is informed that the defendant, if sentenced to life, will be in prison society for 40 years, at the end of which time he will be eligible for parole release into free society. Capital defendants have been unsuccessful thus far in convincing enough members of this Court that jurors asked to make this daunting prediction are entitled to know what society they are expected to protect at what time.

However, defense counsel have been very successful in convincing trial judges in Harris County (who bear a tremendous share of the burden of trying capital cases in this state) that the information is an indispensable component of a fair trial, from voir dire through closing argument. Appellant's is such a case. His jury had the information; they had evidence upon which to base their prediction. Appellant asks the court to acknowledge in its sufficiency review the facts and the law upon which the case was actually decided. If the jury knew it, this court must "know it" in reviewing their verdict.

The facts in this case were insufficient to convince a rational jury that, beyond a reasonable doubt, Appellant would commit criminal acts of violence that would constitute a continuing threat to prison society, where he would spend his life for 40

calendar years and/or that if he <u>were</u> to be released on parole at the first available opportunity, as a 58 year old man after 40 years incarceration, he would beyond a reasonable doubt probably commit criminal acts of violence that would constitute a continuing threat to free society.

There is an additional factor, unique to a Texas capital case, which the court must take into account in addressing sufficiency on the continuing threat issue when the jury has been given the 40 year information in the charge. The factor is this: in order to make the prediction about the defendant's dangerousness, or not, to "society", the jury must predict as accurately as they can what society he will be in and for how long. They were given the information, in this case, that he will be in prison for 40 years. So, the jurors may conscientiously apply the evidence they have heard to make the prison society prediction with confidence that they are considering the correct question.

However, once the jurors answer that question (which, Appellant submits, should always be answered "no" if the jury has heard evidence, as they did here, about prison controls) they still must answer the question of the defendant's potential for dangerousness to free society. He will, after all, be eligible for parole in 40 years, if he survives in prison that long.

Appellant submits that the jury may answer this question "no" if they are not convinced beyond a reasonable doubt there is a probability that the defendant, if released after 40 years incarceration would still be a threat as an old man. They may <u>also</u> answer the question "no" if the evidence leads them to believe that because of the nature of his

15

crime and his behavior prior to trial, or because of some mental condition, if any, which is untreatable or which he cannot be trusted to treat in a free world, the particular defendant would never be paroled. The jurors are not just entitled, they are <u>required</u> to predict whether the defendant will be in prison society or in free society, in order to fulfill their oath.

So, Appellant asks this court to recognize, as difficult as it may be and as paradoxical as it may sound, that the more dangerous a defendant appears, the less likely it is that he would ever be paroled. If a jury thinks the evidence shows that a defendant is non-dangerous as long as he is in prison and they believe from the evidence he would never actually be paroled into free society, they would find, necessarily, that he would not be a continuing threat to free society.

The conclusion that the most dangerous people among us will not be put to death under our system seems troubling until one considers that they will <u>not</u> be "among us". If free society and prison society will be protected by imprisonment of the dangerous defendant, without the necessity of executing him, surely that is a good thing. The jury's duty is to protect rather than to accord mercy or exact revenge, then the jurors have achieved the purpose of the law and fulfilled their oaths. Unless our desire is simply to execute the dangerous defendant, we should be satisfied with achieving the actual goal of the Texas death penalty scheme: the incapacitation of the dangerous defendant. The evidence in this case did not prove that it was necessary to execute Appellant.

The State of Texas proved to the jury herein, although not admitted hereby by the

16

Appellant, that he murdered Hugo Solano.  Mr Garcia was shown by the State to be a robber.  It was clear that Mr Garcia engaged in criminal activities.

Dr Walter Quijano testified at length about the TDCJ-ID system of diagnosis, classification, treatment, medication and security measures to nullify any threat.  He also told the jury about the "aging out" phenomenon that applies statistically to persons in the Appellant's age group, showing a general reduction in violent tendencies with the mere passage of time (R.R. Vol 24, pp. 21-22).

Although the State "proved" numerous acts of misconduct or assaultive acts, all those acts were not probative of his being a continuing threat.

## Arguments and Authorities

Again, Appellant says this court must address the sufficiency issue in the same way jurors addressed it, according to the 40 year information they were given.  Did the State prove, first that Appellant would be a continuing threat to prison society for the next 40 years? Obviously they did not.  Did they then prove that if he were released in the year 2038 or afterward he would be a threat to free society?  They did not.  Their evidence was simply inadequate as a predictor that after 40 years in prison Appellant would be – beyond a reasonable doubt – a dangerous old man in the free world.

## General Standard for Prediction of Continuing Threat

Appellant is aware that when deciding whether there was sufficient evidence to support a jury's finding that there is a probability the defendant will commit criminal acts of violence that will constitute a continuing threat to society, this Court views the

17

evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the elements of Article 37.071(b)(2), V.A.C.C.P. beyond a reasonable doubt. See *Stoker v State*, 788 S.W. 2d 1, 7 (Tex.Crim.App. 1989), *cert denied*, U.S. 951 (1990).

> "Prior criminal conduct, the age of the defendant and psychiatric evidence are among the various factors relevant in deciding the second punishment issue" *Rodney v State*, 632 S.W. 2d 598, 661 (Tex.Crim.App. 1982)

The Court has listed as relevant factors the following:

1. the circumstances of the capital offense, including the defendants state of mind and whether he was working alone or with other parties
2. the calculated nature of the defendant's acts
3. the forethought and deliberateness exhibited by the crime's execution
4. the existence of prior criminal record, and the severity of the prior crimes
5. the defendant's age and personal circumstances at the time of the of the offense
6. whether the defendant was acting under duress or the domination if another at the time of the offense
7. psychiatric evidence and
8. character evidence

*Keeton v State*, 724 S.W. 2d 58, 61 (Tex. crim.App. 1987). See also *Barnes v State*, 876 S.W. 2d 316 (Tex.Crim.App. 1994)

The Appellant acknowledges that this list, including the aforementioned prior criminal conduct, age and psychiatric evidence, is not an exhaustive one, but it has been, in practice the standard by which the court has judged sufficiency. In 1977 the Court addressed what it considered to be relevant factors on the future dangerousness issue, and

18

it is significant that every factor in that list is one that can be argued in Appellant's favor in this case, either as a factor that was not proven by the State, or as a factor that was proven by his own evidence:

> "This Court has stated that in determining the likelihood
> of whether or not a defendant would be a continuing threat to
> society, the jury could consider whether the defendant has a
> significant criminal record.  It would consider the range and the
> severity of his prior criminal conduct.  It could further look at the
> age of the defendant and whether or not at the time of the
> commission of the offense he was acting under duress or under the
> domination of another.  It could also consider whether the defendant
> was under an extreme form of mental or emotional pressure,
> something less, perhaps than insanity but more than the emotions of
> the average man, however inflamed, could withstand (Citations
> omitted).

See, ***Robinson v State***, 548 S.W. 2d 63, 64 (Tex.Crim.App. 1977).

This list of factors must be viewed in a case like Appellant's in the context in which the jurors predicted the likelihood of his dangerousness certainly in one society for a definite period of time (40 years in prison society) and hypothetically in another society (after 40 years, perhaps in free society).

19

## Prison Society for 40 Years

The circumstances of this offense were not proven to be duplicated or even approximated as a possibility in prison.

Dr Quijano's testimony showed, to put it briefly, that the prison system was well-equipped to handle "dangerous" prisoners, to identify them, classify them, treat them and if necessary, isolate them in order to incapacitate them while they were in prison society. He clearly testified that the prison system was designed to and <u>would</u> prevent dangerous persons from being a continual <u>threat</u> in that system.

In contrast to other cases, then, the State offered no psychiatric or other expert evidence to show that Appellant would be dangerous in prison society. In *Nenno v State*, 970 S.W. 2d 549 (Tex.Crim.App. 1998) for example, an expert on the subject of sexual victimization of children testified that the appellant was a pedophile, a type of person difficult to rehabilitate, would be an extreme threat to society, especially to children within his age preference, *Id.* at 552. Because the court in *Nenno* did not mention the fact that there were no seven year old children in prison, or discuss whether the expert testified that 40 years was not long enough to rehabilitate a pedophile (or that particular pedophile) Appellant assumes that the jury in *Nenno* was not charged on the 40 year rule. (If they were, the opinion certainly should have discussed the expert's testimony with regard to the two different societies in question).

The age factor, as it applies to this question, weighs in Appellant's favor because although Appellant would live under control for 40 years in a different society, where the

evidenced showed he would not be allowed to be a continuing threat.

## Free Society After 40 Years

At the very least the Appellant could not be released into free society until he had been in prison society for 40 calendar years. The jury knew this. It makes no difference that the special issue number one did not ask as a separate question whether Appellant would be a danger in 40 years. This is clearly a matter the jurors were required to address because they knew Appellant would at least be eligible for parole release after 40 years. The special issue does ask the jury to assess the defendant's future dangerousness "as he sits here today" but only in the sense that the prediction must be made upon evidence available to the jury today as to whether the defendant will be a threat immediately as he goes into prison society today or whether he will be a threat as he sits in prison 40 years from today, asking to be released into free society. The jurors would be contradicting the law they received in the jury charge if they were to judge Appellant's dangerousness to free society "as he sits here today". The reality is that Appellant, like any other capital defendant does not just "sit there". He goes somewhere. Where does he go? Prison. How long does he stay there? For 40 years. Where does he go then? Perhaps into free society? Appellant does not complain that "society" was not defined. See *McDuff v State* 939 S.W. 2d 607, 620 (Tex.Crim.App. 1997). The jury knew from the 40 year charge exactly what society meant.

The promise of the 40 year rule is to protect free society. One supposes that the purpose of special issue number one is the protection of society as a whole, whether it is

21

prison society or free society.  If the State proved the defendant is a continuing threat to either society they are entitled to a yes answer for the protection of that society.  But what the State cannot do, given our law of mandatory incarceration for 40 years, is to obtain a verdict based upon insufficient proof.  It is a false promise, indeed a lie, to ask a jury to make a prediction that Appellant will be a threat <u>now</u> to free society when they are told that he is not going to be in that society for 40 years.

The reason the Supreme Court reversed the death sentence in ***Simmons v South Carolina,*** 512,U.S. 154,114 S.Ct. 2187, 129L.Ed.2d 133 (1994) was that the prosecutor asked the jury to sentence the defendant to death based upon a danger that did not exist, under South Carolina law.  He suggested to them that the defendant would be a danger to free society when in fact the life without parole law meant the defendant would never be in free society.  In this case, the jurors were free to assume from the evidence that he would never be in free society because he would never be paroled.

The State offered no evidence to prove or even suggest that Appellant would be unaffected by the passage of time, especially by the passage of 40 years prison time, during which he would receive treatment. they offered no expert or psychiatric evidence that his disorder, however violent its manifestations might have been, would, beyond a reasonable doubt, occur again if Appellant survived for 40 years and were released, or if he showed no recovery and were kept in prison.

If this court uses the cases holding that the facts of the crime alone can support a finding of future dangerousness, to make the sufficiency analysis in a case in which the

jury is charged on the 40 year rule, it must analyze the evidence to see if it does in fact answer the question: where the facts of the crime applied in some way to the defendant's dangerousness after he has spent 40 years in prison? If the Court does not take the 40 year fact into account, then it will indeed have reached a state of automatic affirmance as feared by the opinion concurring and dissenting in *McGinn v State*, 961 S.W. 2d 161, 176 (Tex.Crim.App. 1998) Overstreet, J., concurring and dissenting. Thus the presence or absence of psychiatric or expert evidence which has been an important factor in past cases assumes a special significance when the prediction as to free society is acknowledged to be a 40 year prediction.

The State, which bore the burden of proof, gave the jury no evidence by which they could apply the relevant factors to the 40 years-in-prison framework they were required to use. They were given no evidence to inform the prediction they had to make, except by the defense, and that refuting evidence showed Appellant would not be a continuing threat to prison or free society. Likewise, this court applying the same framework must find that there was insufficient evidence upon which a rational juror could find beyond a reasonable doubt that there was a probability Appellant would commit criminal acts of violence that would constitute a continuing threat to either society.

Because the State failed to prove the continuing threat special issue under the applicable jury instruction, the Court should reform Appellant's punishment to life in prison with its applicable 40 year parole ineligibility requirement.

## POINT OF ERROR THREE

## THE TRIAL COURT REVERSIBLY ERRED IN NOT CHARGING THE JURY THAT EXTRANEOUS OFFENSES BE PROVED BY THE STATE OF TEXAS BEYOND A REASONABLE DOUBT

### Arguments and Authorities

Numerous offenses of robbery were attributed to the Appellant herein.  See: Jason Jett (R.R. Vol 21, pp.34-59); Matthew Henderson (R.R. Vol 21, 59-70); Raulot Lockett (R.R. Vol 21, pp. 73-83); Bruce Rose (R.R. Vol 21, pp.84-97); David Venables (R.R. Vol 21, pp. 97-112); James Issac (R.R. Vol 21, pp.126-145); Kevin Nunn (R.R. Vol 21, pp.48-162); Angie Allen (R.R. Vol 21, pp.163-172); Benjamin Garcia (R.R. Vol 22, pp.53-58); Roy Nowlin (R.R. Vol 22, 58-70); Ascio Mesa (R.R. Vol 22, pp.74-90) and Ozzie Brown (R.R. Vol 22, pp. 91-109)

However, not one victim could identify the Appellant as being the perpetrator. The sole basis was a similar modus of operation to the case in chief. The offenses were allegedly committed by more than one person.  The jury was not provided any basis upon which to evaluate these extraneous crimes to the Appellant.

Appellant is mindful of the rulings of this honorable court in *Fuentes v State,* 991 S.W. 2d 267, 280 (Tex.Crim.App. 1999) and *Kutzner v State,* 994 S.W. 2d 180, 188 (Tex.Crim.App. 1999).

However, it is a significant issue for the jury to understand clearly that each extraneous offense is a separate offense and to be judged on its own merits and not to be assumed by the sheer weight and magnitude of the offense before it and the likely

24

association that guilt will be inferred thereby. The fact that future dangerousness must be proved beyond reasonable doubt does not sufficiently explain the appropriate burden to the jury, which does not have the expertise of trained counsel and the court in this incredibly serious context.

Appellant respectfully requests the court to readdress this issue.

Appellant's sentence of death should be set aside and a new sentencing hearing be held under 37.071 of the Code of Criminal Procedure as set forth in Article 44.29 of the Code of Criminal Procedure.

## PRAYER FOR RELIEF

For the above and foregoing reasons, it is respectfully submitted that upon appellate review, the Court of Criminal Appeals should reverse the judgment of the Trial Court and dismiss or remand for a new trial either at guilt or punishment as appropriate herein.

Respectfully submitted,

FLOYD W. FREED, III
6630 Cypresswood Dr., Suite 200
Spring, Texas 77379
Telephone: (281) 374-8886
Fax: (281)379-6916
State Bar No. 07413500
ATTORNEY FOR APPELLANT
(ON APPEAL ONLY)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Brief of Appellant was delivered to the Office of the District Attorney of Harris County, Texas on the 3rd day of November 2000.

FLOYD W. FREED, III

26